Bernard E. TITUS, Appellant,

v.

STATE of Alaska, Appellee.

No. 968.

Supreme Court of Alaska.

March 3, 1969.

Joe P. Josephson, Anchorage, for appellant.

G. Kent Edwards, Atty. Gen., and Robert L. Hartig, Asst. Atty. Gen., Juneau, for appellee.

Before NESBETT, C. J., and DIMOND and RABINOWITZ, JJ.

## OPINION

RABINOWITZ, Justice.

Involved in this appeal is the validity of a decision of the State Personnel Board. On March 22, 1966, appellant was dismissed from his employment as a Maintenance Mechanic Foreman II in the Division of Lands, Department of Natural Resources, State of Alaska. After departmental appeals had been taken, appellant then appealed his dismissal to the State Personnel Board. Subsequent to an open hearing which was held on October 27 and 28, 1966, the board recommended

> that [appellant] Mr. Bernard Titus be cleared of these charges and that his request to the Board that he be permitted to submit a letter of resignation effective March 22, 1966 be honored.

Appellant then instituted an action in the superior court seeking reinstatement and compensation from the date of his allegedly unlawful dismissal from state employment.[1] The issues were thereafter presented to the superior court by cross motions for summary judgment. The superior court denied appellant's motion for partial summary judgment but granted appellee's motion for summary judgment. In granting summary judgment, the court specifically affirmed the State Personnel Board's recommendation that appellant be allowed to resign effective as of March 22, 1966, the date of his dismissal. The superior court's order also contained the following language:

> [T]he ambiguity in the holding of the Board, specifically 'that Plaintiff be cleared of these charges' means that only the employment record of the Plaintiff be cleared.

In support of his contention that both the State Personnel Board and the superior court reached erroneous conclusions, appellant's primary argument is that the board's own findings of fact precluded the recommendation which was made.

Personnel Rule 11 05.2, promulgated pursuant to the State Personnel Act of 1960, provides that a state employee possessing permanent status "may be dismissed by the appointing authority for just cause only."[2] As to permanent status employees, AS 39.25.170(a) further establishes a right to a hearing before the State Personnel Board for any employee "who is dismissed, demoted, or suspended for more than 30 working days in a 12-month period * * *."[3] In regard to this hearing be-

---

1. In his complaint appellant alleged that he had been wrongfully dismissed from employment contrary to statute and applicable personnel rules. It was further alleged:

 That the Board had no power to enter any other order pursuant to its findings, other than an order to reinstate the wrongfully dismissed employee to his position without loss of pay or leave benefit, as is required by Sec. 39.25.170 (incorporated into the personnel rules as Rules 12.01.241 and 12.01.242).

2. There is no dispute that appellant possessed permanent status at the time in question. The full text of the Personnel Rule 11 05.2 reads:

 An employee who holds permanent status may be dismissed by the appointing authority for just cause only. An employee who is being dismissed for cause shall be provided with a statement in writing, setting forth reasons for the dismissal. A copy shall be sent to the Director.

3. AS 39.25.170(a) reads as follows:

 An employee in the classified service who is dismissed, demoted, or suspended for more than 30 working days in a 12-month period shall be notified in writing by his employer of the action and the reason for it and may be heard publicly by the personnel board and may be represented by counsel at the hearing. In order to be heard, the complainant shall request a hearing within 15 days of dismissal, demotion or suspension.

 An employee holding permanent status is considered "An employee in the classified service" under AS 39.25.170(a). Whaley v. State, 438 P.2d 718, 722 (Alaska 1968).

fore the State Personnel Board, subsection (b) of AS 39.25.170 provides that:

> If the board finds that the action complained of was taken for a political, racial or religious reason, or in violation of this chapter or the rules adopted under this chapter, the officer or employee shall be reinstated to his position without loss of pay or leave benefit for the period of his dismissal, demotion, or suspension. In all other cases, the board shall report its findings and recommendations to both parties.[4]

It is on the basis of the foregoing personnel rules and statutory provisions that appellant grounds this appeal. Essentially appellant argues that the findings of the State Personnel Board demonstrate he was not dismissed for cause, and therefore AS 39.25.170(b) required the State Personnel Board to order his reinstatement "without loss of pay or leave benefit for the period of his dismissal."

Appellant bases his conclusion that the board found an absence of just cause for dismissal upon the following paragraph from the decision of the board:

> The testimony and exhibits did not in general support the dismissal action of the employer. The department attempted to pyramid smaller charges requiring lesser action into a case for dismissal. Testimony of actions as much as two years old were presented as grounds for dismissal

when proper management would have called for administrative action at the time of the infraction. Procedures and responsibilities were so ill-defined by the Department that it was not possible to determine responsibility in many instances.

Since the board found no cause for his dismissal, appellant further argues that AS 39.25.170(b) required his reinstatement with back pay and leave benefits.[5] We disagree and hold that the decisions of the State Personnel Board and the superior court should be affirmed.

■ In all instances where the State Personnel Board does not find that the action complained of was taken for political, racial, or religious reasons, or in violation of the State Personnel Act or the rules promulgated thereunder, the legislature, in AS 39.25.170(b), has provided that the "board shall report its findings and recommendations to both parties." [6] Our study of the record has led us to the conclusion that the board's decision and recommendation were authorized by AS 39.25.170(b) and justified in light of the record.

Review of the text of the board's decision shows the following. Under the heading *"Position of Grievant,"* the text reads:

> Mr. Bernard E. Titus requested that his name be cleared of the charges and that he be permitted to resign as of March 22, 1966 in lieu of the dismissal.

---

4. The comparable personnel rules are:
 Personnel R. 12 01.241 which reads:
 If the Board finds that the action complained of was taken for any political, racial, or religious reason, or in violation of the provisions of the State Personnel Act as amended or these Rules, the employee shall be reinstated to his position without loss of pay or leave benefit for the period of his dismissal, demotion, or suspension.
 Personnel R. 12 01.242 further provides:
 In all other cases, the Board shall report its findings and recommendations to the appointing authority and the employee.

5. More particularly, it is appellants' position that Personnel R. 11 05.2 established that once appellant attained permanent status he could be "dismissed by the appointing authority for just cause only." Since his dismissal without just cause violated Personnel R. 11 05.2, appellant argues that the provisions of AS 39.25.170(b) pertaining to reinstatement with pay, and leave benefits restored, became operative.

6. AS 39.25.170(b) provides in part: "In all other cases, the board shall report its findings and recommendations to both parties."

In the portion of its decision captioned *"Issues Considered,"* it was stated:

The Personnel Board received exhibits and listened to testimony concerning the six reasons listed by the employer for the dismissal. The Board considered not only the reasons but also whether the action taken was appropriate.

Under the heading *"Reasons Listed by Employer for the Dismissal,"* six separate charges were set forth. Charge number one reads:

Removal of the State equipment from the shop and its use outside the shop over an extended period of time; specific reference being made to a desk and a mitre box. This is in violation of the Forestry Branch Order #14 dated March 9, 1962.

As to this charge, the board found:

Mr. Titus did have at his home a desk and a mitre box and that they were returned. Testimony revealed many others also borrowed tools and equipment. No testimony was submitted indicating any action was taken against other violators.

In charge number three it was asserted that appellant engaged in "personal construction projects on State time in the Forestry and Parks' shop." As to this charge, the board found that:

Testimony indicated that he had been permitted to work on personal projects during lunch time and that on one or two occasions he had not promptly stopped at the conclusion of the lunch hour.[7]

Concerning the board's finding of fact in regard to the first and third charges, we have concluded that the finding "Mr. Titus did have at his home a desk and a mitre box," and the finding that appellant "had been permitted to work on personal projects during lunch time and that on one or two occasions he had not promptly stopped at the conclusion of the lunch hour," were supported by substantial evidence.[8]

Of additional significance is the following portion of the partial transcript which was made of the October 27 and 28, 1966, hearing before the State Personnel Board.[9] Toward the end of the hearing appellant was asked by the hearing officer:

Hearing Officer: Well, do you feel that, if we decided that you should have your job back, you could work under the same supervisor and work in the same position?

Titus: Under Ted I could work, but I feel this way: that under the circumstances now, it would be very difficult, not only for myself but for the other employees that are involved in this hearing, to really work together. I think this is probably common knowledge: that something like this does create high feelings. It would be very difficult for them to work with me and vice versa, so I would, no doubt, have to tender my resignation. But the main thing here is that I am still a relatively young person and I have a life ahead

---

7. As to the remaining four charges, the board found no basis in the record upon which they could be sustained.

8. In Keiner v. City of Anchorage, 378 P.2d 406, 411 (Alaska 1963) (footnotes omitted), we said:
 In dealing with this issue we apply the rule that the board's findings should not be reversed if in the light of the whole record they are supported by substantial evidence, i. e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

9. Considerable delay in the superior court's review of this matter was caused by loss of the tape of the hearing, inability to locate a machine upon which the tape could be played once the tape was located, and the generally poor quality of the recording for transcription purposes. The recording apparatus was not of the type regularly employed by the Alaska Court System to record its official proceedings.
 The transcript of the hearing which was furnished to the superior court and to this court is obviously incomplete for it commences at a point during a witness' testimony.

of me. Everytime I make out an application now I have six years of service with the State, and a dismissal. Very few firms will call me and ask me to go through what I went through today and explain point by point my reasons for dismissal. And, therefore, what they would normally do would be to possibly write back to the State, to the personnel office or something of that nature, and they would receive 'He was dismissed because of this, this and this' without an explanation. And this would automatically prevent me from getting any decent type of employment in my creative field or any other creative field.

In light of the foregoing, we believe that ambiguity in the board's recommendation is clarified. As we previously indicated, the board's decision recommended that appellant

be cleared of these charges and that his request to the Board that he be permitted to submit a letter of resignation effective March 22, 1966 be honored.

 From a study of the record we think it apparent that the members of the State Personnel Board found extenuating circumstances surrounding appellant's dismissal. This factor, when considered with appellant's request that he be permitted to resign and that his record be cleared, brings us to the conclusion that the phrase "be cleared of these charges" was intended to apply to appellant's employment record. We, therefore, hold that the board's decision is legally authorized under the last sentence of AS 39.25.170(b) and is factually justified by the record.[10]

The judgment of the superior court affirming the decision of the State Personnel Board is affirmed.

---

10. In opposing appellant's motion for summary judgment in the superior court, counsel for appellee stated in part in a memorandum that:

> The transcription of the personnel hearing is the record of the hearing, but it is not the *complete* record. The complete record should include the oral request by a member of the Personnel Board as to what the plaintiff sought from the Board, and should also include plaintiff's reply, 'to have his record cleared and be allowed to resign as of the date of dismissal.' The oral request it not found in the taped record, but is documented by the affidavits submitted by the Board members.

Affidavits from the individual members of the State Personnel Board were filed in conjunction with the foregoing memorandum. These affidavits support counsel's assertion that appellant had requested his record cleared and he be permitted to resign in lieu of dismissal. We have decided this appeal apart from any consideration of the text of these three affidavits and whether they could be made part of the record, in light

of the incomplete state of the transcription of the hearing which was held before the State Personnel Board. *Compare* Ex parte United States, 101 F. 2d 870 (7th Cir. 1939); Carter v. J. W. Silver Trucking Co., 4 Cal.2d 198, 47 P.2d 733 (1935). In these cases it was held that all courts have inherent power to correct their records so they shall conform to the facts and speak the truth and that this right is not suspended once an appeal has been taken. *See* Civil Rule 60(a) which provides:

> Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders. During the pendency of an appeal or petition for review to the supreme court, such mistakes may be so corrected before the record is filed in the supreme court, and thereafter may be so corrected with leave of the supreme court.

*See also* Patterson v. Cushman, 394 P. 2d 657, 668 (Alaska 1964).