Keith E. PLANCICH and Ted Wicorek
d/b/a Plancich and Wicorek
Enterprises, Appellants/Cross-Appellees,

v.

STATE of Alaska, City of Yakutat, Larry Powell, Robert Anderson, James M. Kohler and Roy Bowman, Appellees/Cross-Appellants.

Nos. S–97, S–98.

Supreme Court of Alaska.

Jan. 18, 1985.

---

Steven P. Oliver, Anchorage, for appellants/cross-appellees.

Ken Norman, Pletcher & Slaybaugh, Anchorage, for appellees/cross-appellants.

Before BURKE, C.J., and RABINOWITZ, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

BURKE, Chief Justice.

Plancich and Wicorek sued the State of Alaska, the City of Yakutat, and four individual Yakutat city officials, alleging negligence. This is an appeal from an order granting summary judgment in favor of the defendants. The trial court found

that the defendants owed no duty of care to the plaintiffs.[1] We reverse.

## I

In March, 1981, Plancich and Wicorek flew their seaplane from the State of Washington to Yakutat, Alaska. The City of Yakutat has a small boat harbor, part of which it has designated as a seaplane dock. The State of Alaska owns and leases this facility to the City of Yakutat. Plancich and Wicorek decided to land and dock in Yakutat, relying at least in part on federally published information that there was a seaplane facility there. This information, however, notes that the Yakutat seaplane dock is "unattended" and cautions pilots that "many boats use [the] docking area."

When they arrived in Yakutat, Plancich and Wicorek found the seaplane dock totally surrounded by fishing vessels, making it unavailable for their use. Accordingly, they tied their plane up at a privately-owned dock which allegedly was not equipped to safely secure a seaplane in bad weather. A storm arose, forcing the pilots to spend the night in Yakutat. During the night the seaplane sank due to the violence of the storm.

Plancich and Wicorek brought suit against the State of Alaska, the City of Yakutat and four Yakutat city officials. They alleged that these defendants negligently breached their duty to keep the seaplane dock available to members of the public, such as themselves, who wished to dock seaplanes.

■ The defendants moved to dismiss the complaint. On March 4, 1983, the superior court, Judge Walter L. Carpeneti presiding, granted the defendants' motion.[2] The trial court agreed with the defendants that they owed no duty to the plaintiffs, under either statutory or common law theories. This appeal followed.[3]

## II

■ The defendants first argue that both Yakutat and the state are immune from liability under AS 09.50.250(1)[4] and AS 09.65.070(d)(2),[5] since the decision to allow boats to dock at the seaplane dock was a discretionary decision.[6]

■ In *State v. Abbott*, 498 P.2d 712, (Alaska 1972), we adopted the planning/operational distinction to determine which governmental acts constitute discretionary functions. Only "basic policy decisions" that are "expressly entrusted to a coordinate branch of government" are planning decisions immune from tort liability under the discretionary function exception. *Id.* at 721. *See also State v. I'Anson*, 529 P.2d 188, 193 (Alaska 1974).

> A person or corporation having a contract, quasi-contract, or tort claim against the state may bring an action against the state in the superior court.... However, no action may be brought under this section if the claim (1) ... is an action for tort, and based upon the exercise or performance or the failure to exercise or perform a *discretionary function* or duty on the part of a state agency or an employee of the state, whether or not the discretion involved is abused;
> (Emphasis added).

1. On appeal, plaintiffs also assert that Yakutat breached its contractual duty with the state to maintain the seaplane dock. Plaintiffs contend that they were intended third party beneficiaries of the contract and are entitled to damages for the city's breach. This argument is without merit. The gist of plaintiffs' theory for recovery lies in tort. No belated contractual theory of recovery is maintainable.

2. The superior court considered documents outside the pleadings in making its determination. Accordingly, the motion was appropriately treated as one for summary judgment. Alaska R.Civ.P. 12(b).

3. Defendants also filed a cross-appeal on the issue of attorney's fees. Our resolution of the plaintiffs appeal makes consideration of the cross-appeal unnecessary.

4. AS 09.50.250 provides in pertinent part:

5. AS 09.65.070(d)(2) contains a discretionary function immunity provision for municipalities with language identical to AS 09.50.250(1).

6. Defendants also contend that Yakutat is immune under AS 09.65.070(d)(1). This argument is without merit, as that provision renders immunity only in certain circumstances relative to health and safety statutes, regulations or ordinances.

In the instant case, Plancich and Wicorek contend that the day-to-day operation of the seaplane dock was negligently undertaken. Although the initial decision to build and operate the seaplane dock may well be characterized as a planning decision, a decision concerning the manner in which the seaplane dock should be operated and maintained is clearly an operational decision. As such, it does not fall within the discretionary function exception to government tort liability.[7] Accordingly, neither the state nor Yakutat is immune from possible negligence liability in this action.

We turn next to the main issue on appeal: whether the trial court erred in concluding that the defendants owed no duty to the plaintiffs.

### III

Among other things, plaintiffs rely on a number of statutory provisions, which they contend establish such a duty.[8] AS 02.15.160 authorizes the state to "construct, maintain or operate floats and seaplane ramp landing facilities, subject to the provisions of ... AS 02.15.120." AS 02.15.120 requires persons operating such facilities to make them "at all times available for the use of and accessible to the general public." AS 02.15.090 provides that "(a) ... [i]n no case shall the public be deprived of its rightful, equal and uniform use of ... airport [facilities]," and that in operating an airport facility leased from the state, "(b) ... [n]o municipality ... may operate [it] other than as a public airport." Defendants acknowledge that these provisions apply to the Yakutat seaplane dock, but dispute plaintiffs' contention that a duty was owed thereby to the plaintiffs.

The defendants argue that AS 02.15.120, the key provision relied upon by plaintiffs,

provides only that airport facilities shall be made available to the *general* public, and that the plaintiffs, therefore, had no special right of access to the seaplane dock. According to the defendants, "the general public includes vessels and other[s] ... who may want to use the dock." Thus, the defendants argue, they were under no duty to keep the dock clear of vessels, in order to provide favored access to seaplane operators. Since there is no evidence of any use other than use by the general public, the defendants further contend that there was no violation of the statutes.

The defendants' argument, which the trial court appears to have accepted, is without merit. Their interpretation would mean that airport tie-down facilities be available for use by all members of the public, on a first come-first served basis, without regard to the type of vehicle being operated. This interpretation, we believe, makes little sense.

We think that by enacting the provisions cited, the legislature intended to insure that airport facilities would be made available, on a priority basis, to that segment of society for which those facilities are designed. Thus, in this instance, the statutes' reference to "the public" and "the general public" can only mean the *flying* public, *i.e.*, those persons operating aircraft or machinery used incidental to the operation of aircraft. The equal and public access guaranteed by those sections applies only to users in this category, not the public at large. By no stretch of the imagination could the intended category include operators of fishing vessels.

Given the express requirements of AS 02.15.120, that airport facilities "shall be at all times available for the use of and accessible to the general public," as here

---

7. *See Johnson v. State,* 636 P.2d 47, 65 (Alaska 1981) (while decision whether to build a railroad crossing is a planning decision, discretionary function immunity does not protect state from possible negligence liability in the operational carrying out of the basic policy decision to build).

8. The statutes are cited in this case as the *source* of the defendants' duty, rather than as statements of the precise nature of that duty. *See Morris v. City of Soldotna,* 553 P.2d 474, 477–78 (Alaska 1976) (statute relied upon as the source of the defendants duty rather than "as a more precise definition of a previously-recognized common law duty of reasonable care").

interpreted, the defendants were under a duty to take reasonable precautions to keep the seaplane dock available for the plaintiffs' use, and to furnish them access to it. The duty imposed is one of reasonable care.

■ The defendants were under no duty to provide a seaplane dock at Yakutat, nor were they required to guarantee the availability of docking space for every seaplane that might happen along. They were, however, under a duty to keep the seaplane docking space that was available accessible to seaplanes. Seaplane operators are among the class of persons that AS 02.15.-120 was designed to protect; operators of fishing vessels are not. Thus, the superior court erred in concluding that the defendants owed no duty of care to the plaintiffs. The court's decision, therefore, must be reversed.[9]

Having reached this conclusion, it is unnecessary for us to decide whether plaintiffs were owed a common law duty.

REVERSED and REMANDED.

---

**9.** The trial court's decision was also based upon its conclusion that a violation of the sections cited would not support a private right of action for damages. We reach the opposite conclusion, having determined that such an action "is appropriate in furtherance of the purpose of the legislation and needed to assure [its] effectiveness." Restatement (Second) of Torts § 874A (1979).