Ron WALT, and Dorothy Walt, husband and wife, for themselves and on Behalf of their minor child, Katrina Walt, Appellants,

v.

STATE of Alaska, and Richard A. Lyon, individually and in his capacity as Commissioner of the Department of Commerce and Economic Development, Appellees.

No. S–1338.

Supreme Court of Alaska.

March 18, 1988.

Richard M. Burnham, Findley & Burnham, Juneau, for appellants.

Susan D. Cox, Asst. Atty. Gen., Ronald W. Lorensen, Acting Atty. Gen., Juneau, for appellees.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

OPINION

RABINOWITZ, Chief Justice.

This appeal arises out of the State of Alaska's dismissal of Ron Walt from state employment. The primary issues on appeal are whether Walt's claims under 42 U.S.C. § 1983 are barred by the qualified immuni-

ty of the state official who dismissed him, and whether the applicable collective bargaining agreement precludes asserted statutorily based tort claims and common law tort claims for relief grounded on Walt's allegedly wrongful dismissal.

## I. BACKGROUND.

Beginning in 1977, Walt worked as a development specialist for the Department of Commerce and Economic Development (DCED). In this position, Walt was a member of the state classified service and was subject to the General Government Unit Collective Bargaining Agreement (CBA). His duties included making public presentations. In January, 1984, at the request of the NANA Regional Native Corporation and the Deputy Commissioner of DCED, Walt, along with his co-worker James Wiedeman, attended an economic development workshop in Kotzebue as representatives of DCED.

Walt and Wiedeman spoke to the economic development workshop of the NANA conference about the Red Dog Mine project, and its chances for success. The Red Dog Mine project entails the development of a large scale lead-zinc mine by a Canadian mining company. Walt advised small business people not to make any decisions in their personal or business lives based on the Red Dog Mine, and cautioned them not to let their hopes ride too high. Walt and Wiedeman each spoke for about three or four minutes.

On January 25, 1984, the *Tundra Times* printed an article about the NANA conference which reiterated Walt's and Wiedeman's conference remarks. The *Tundra Times* article came to the attention of John Schaeffer, the NANA president. Schaeffer hand delivered a letter to the DCED Commissioner, Richard A. Lyon, in which he stated that he was "disturbed" over Walt's advising people not to base their personal or economic decisions on the existence of the Red Dog Mine.

Lyon asked his deputies, Vince O'Reilly and Terry Elder, to determine whether the article was accurate. On February 17, 1984, Deputy Commissioners Elder and O'Reilly, Lois Cook (Director of Administrative Services for DCED), Willie Sykes (Walt's immediate supervisor), and two representatives from the Alaska Public Employees' Association (APEA) met with Walt. Walt was given the opportunity to read the *Tundra Times* article and John Schaeffer's letter. He was then asked whether he had said what was attributed to him in the article. Walt confirmed that the article was generally accurate. Additional questions concerning Walt's knowledge of the metals market, the price of zinc, and the status of the contractual relationship between NANA and the Canadian mining company were discussed. Walt also volunteered that during the January 1984 workshop he had a conversation with John Schaeffer in which he told Schaeffer he wanted to make sure NANA moved cautiously. Later, Deputy Commissioner O'Reilly decided to send Walt home for the remainder of the day, while the department determined what action, if any, to take against him. When Walt returned to work on the following work day Sykes asked him to resign. Walt refused, and subsequently was dismissed.

Commissioner Lyon's dismissal letter stated that Walt was fired because his comments about the Red Dog Mine at the NANA conference "damaged the State's position on the project" and were made "without proper knowledge of the project or authorization to provide such information...."

Walt immediately filed a grievance with his collective bargaining representative, APEA. The grievance was denied by Commissioner Lyon. The grievance proceeded to the next level, which requires review by the Department of Administration. Commissioner Rudd of the Department of Administration determined that discharge was not warranted, and ordered that Walt be reinstated to his former position with back pay and benefits. She instructed DCED to remove the dismissal letter from Walt's personnel file and replace it "with a reprimand warning Mr. Walt that any further repetition of inappropriate public comments will result in his dismissal." Walt went

back to work as a DCED development specialist II in mid-May 1984, after being unemployed for about four months. A letter of reprimand was given to Walt and placed in his personnel file. Walt pursued his grievance to the final step, arbitration, in an attempt to have the letter of reprimand removed from his personnel file. The arbitrator denied Walt's grievance and upheld the letter of reprimand.

After the Department of Administration's decision to reinstate Walt to his position, the fiscal year 1986 budget passed by the Alaska legislature included funding for only two development specialists, both in the Anchorage office. Thus, Walt's Juneau position was absent from the department's fiscal year 1986 budget.

## II. PROCEEDINGS.

Approximately one month after his initial reinstatement, Ron Walt and his family filed suit against the State of Alaska, Richard A. Lyon, former Commissioner of DCED, Vince O'Reilly, Deputy Commissioner of DCED, and Willie Sykes, Walt's immediate supervisor at DCED (hereafter collectively referred to as "the state") for damages stemming from Walt's dismissal. Walt asserted several claims for relief: (1) a 42 U.S.C. § 1983 claim for violation of his free speech and substantive due process rights; (2) a claim for violation of state statutory and personnel rules based on the state allegedly taking an action affecting Walt's employment for reasons not related to merit (prohibited by AS 39.25.160(f) and Personnel Rule 1105.2); (3) a claim that defendants defamed him; (4) a claim that defendants breached a duty not to fire him without exercising reasonable care to determine in good faith whether or not there was just cause for his firing; (5) a claim for a public policy tort based on the alleged retaliatory elimination of funding for his position; and (6) a tort claim for both negligent and intentional infliction of emotional distress to Walt, his wife, and daughter arising from the state's alleged failure to exercise reasonable care in determining whether just cause existed to fire Walt.

The superior court granted summary judgment in favor of the state. It found that "[t]he grievance procedure provided for in the collective bargaining agreement [was] Walt's exclusive method of recourse in this matter," based on the CBA specifying that the arbitration procedure was to be " 'the sole method of settling' disputes between employees and employers." Therefore, the court held that "Walt's causes of actions [sic] based on tort and contract claims are barred." The superior court also declined to imply the existence of a constitutional cause of action, and concluded that Walt waived his constitutional due process rights by proceeding through the CBA and therefore no § 1983 cause of action was available. Finally, the court dismissed Walt's wife's and daughter's claims since they were derivative of Walt's claims.[1]

Walt moved for reconsideration. The superior court once again granted the state summary judgment, but employed somewhat different reasoning in disposing of Walt's § 1983 claim. The superior court concluded that the United States Supreme Court's recent decision in *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) undermined the "bitter with the sweet" rationale adopted by courts which held that government employees who benefited from a collective bargaining agreement waived their constitutional due process rights. Consequently, the superior court vacated its prior holding that the CBA constituted waiver of Walt's constitutional rights. Nevertheless, the superior court went on to hold that Commissioner Lyon was entitled to qualified immunity based on its conclusion that at the time of Walt's dismissal, the law was not clearly established that Walt, as a matter of constitutional due process, was entitled to a pretermination hearing. Walt appeals from these rulings. We affirm.

1. Walt did not oppose entry of summary judgment on behalf of the state as to the defamation and free speech claims, or to the § 1983 claims against the state *qua* state. Nor did Walt oppose entry of summary judgment on all claims he had asserted against O'Reilly. Walt also stipulated to the dismissal of Sykes as a party.

## III. DID THE SUPERIOR COURT ERR IN GRANTING THE STATE SUMMARY JUDGMENT ON WALT'S § 1983 CLAIM?

The superior court granted summary judgment[2] in favor of the state on Walt's § 1983 claim. In his appeal, Walt argues that he was deprived of his federal constitutional right to due process because he was not afforded a pretermination hearing. He maintains that the superior court erred in holding that Lyon had qualified immunity based on its determination that there was no clearly established federal constitutional right to a pretermination hearing at the time of his termination.[3] He argues that it was clearly established as of February 1984, that "[s]ome kind of a hearing" was required prior to the discharge of an employee who has a constitutionally protected interest in employment.

The state responds that the type of pretermination "hearing" that was required was not established until the Supreme Court's 1985 decision in *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985).[4] Therefore, the state argues, it was not clearly established what type of hearing was required in 1984 when Walt was terminated and thus Lyon should prevail on the qualified immunity defense.

2. In Merdes v. Underwood, 742 P.2d 245, 248 (Alaska 1987) we stated:
   "When reviewing a grant of summary judgment, this court 'must determine whether there was a genuine issue of material fact and whether the moving party was entitled to judgment on the law applicable to the established facts.'" *Zeman v. Lufthansa German Airlines,* 699 P.2d 1274, 1280 (Alaska 1985) (quoting *Brock v. Alaska Int'l Indus.,* 645 P.2d 188, 190 n. 6 (Alaska 1982)). All reasonable inferences of fact from proffered materials must be drawn against the moving party, and in favor of the non-moving party. 699 P.2d at 1280. The party seeking summary judgment has the burden of proving that his opponent's case has no merit. *Riley v. Northern Commercial Co.,* 648 P.2d 961, 966 (Alaska 1982). Where there is a factual dispute, the non-moving party's version of the facts is assumed correct. *Mat–Su/Blackard/Stephan & Sons v. State,* 647 P.2d 1101, 1102 n. 1 (Alaska 1982) (citing *B–E–C–K Constructors v. State,* 604 P.2d 578, 581 n. 4 (Alaska 1979)).

In *Davis v. Scherer*, 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984), the Supreme Court reiterated the standard to be applied to determine when an official may assert the qualified immunity defense that the Court established in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed. 2d 396 (1982). It stated:

> Under *Harlow*, officials "are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." 457 U.S. at 818, [102 S.Ct. 2727] 73 L.Ed.2d 396. Whether an official may prevail in his qualified immunity defense depends upon the "objective reasonableness of [his] conduct as measured by reference to clearly established law." *Ibid.* (footnote deleted). No other "circumstances" are relevant to the issue of qualified immunity.

*Davis*, 468 U.S. at 191, 104 S.Ct. at 3017–18, 82 L.Ed.2d at 147. As of the date of Walt's termination the decisions of the Supreme Court of the United States had established that "some kind of hearing" was required prior to discharge of an employee who had a constitutionally protected property interest in employment. *Davis*, 468 U.S. at 192 n. 10, 104 S.Ct. at 3018 n. 10, 82 L.Ed.2d at 148 n. 10. However, what kind of hearing had not been specified:

If the superior court's decision was incorrect as a matter of law, this court may uphold the decision if there is any other ground which, as a matter of law, would support the result reached. *Carlson v. State,* 598 P.2d 969, 973 (Alaska 1979).

3. The superior court Memorandum Decision and Order of November 25, 1985, reads in relevant part:
   This court concludes, therefore, that the due process right of public employees to a pretermination hearing cannot be said to have been established until *Loudermill* was decided this year. Lyon is thus entitled to qualified immunity from this section 1983 action since the failure to provide Walt with a pretermination hearing did not violate a constitutional right that was clearly established at the time. [R. 397]

4. *Loudermill* was decided one year after Walt's discharge.

As the Court had considered circumstances in which no hearing at all had been provided prior to termination, or in which the requirements of due process were met, *there had been no occasion to specify any minimally acceptable procedures for termination of employment.* The partial dissent cites no case establishing that appellee was entitled to more elaborate notice, or a more formal opportunity to respond, than he in fact received.

*Id.* (citations omitted; emphasis added).[5] In *Loudermill,* 470 U.S. at 541, 105 S.Ct. at 1492–93, 84 L.Ed.2d at 503, decided the following year, the Supreme Court stated:

[I]t is settled that the "bitter with the sweet" approach misconceives the constitutional guarantee. If a clearer holding is needed, we provide it today. The point is straightforward: the Due Process Clause provides that certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures. The categories of substance and procedure are distinct.

In his separate opinion in *Loudermill* Justice Brennan stated in part:

Today the Court puts to rest any remaining debate over whether public employers must provide meaningful notice and hearing procedures before discharging an employee for cause.

**5.** In *Arnett v. Kennedy,* 416 U.S. 134, 152, 94 S.Ct. 1633, 40 L.Ed.2d 15, 32 (1974), a plurality of the Court found that "[t]he employee's statutorily defined right is not a guarantee against removal without cause in the abstract, but such a guarantee as enforced by the procedures which Congress has designated for the determination of cause." They further concluded "that where the grant of a substantive right is inextricably intertwined with the limitations on the procedures which are to be employed in determining that right, a litigant in the position of appellee must take the bitter with the sweet." 416 U.S. at 153–54, 94 S.Ct. at 1643–44, 40 L.Ed. 2d at 33. Thus, the scope of the property right afforded employees was inextricably linked to the procedures prescribed by statute.

**6.** As indicated at the outset of this opinion, Walt's immediate supervisor, the Department's administrative director, and two representatives of APEA were present at the February 17, 1984 meeting called at Commissioner Lyon's request.

*Id.* at 551–52, 105 S.Ct. at 1498, 84 L.Ed.2d at 510.

■ The superior court relied on the pre-*Loudermill* cases in its decision:

The decisions in *Harlow* and *Davis* make it clear that Lyon's subjective intent is, at least at the outset, irrelevant to the issue of qualified immunity. *Davis,* 468 U.S. at 190–91, 104 S.Ct. at 3017, 82 L.Ed.2d at 147. Lyon, who was undeniably acting in a discretionary capacity, *State v. Haley,* 687 P.2d 305 at 316 (Alaska 1984), is entitled to qualified immunity unless his action violated a constitutional right that was clearly established at the time. *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738, 73 L.Ed.2d at 410–11.

The superior court went on to hold that the right to a pretermination hearing under the federal constitution was not clearly established at the time of Walt's termination. We agree that the type of pretermination hearing Walt was entitled to was not clearly established at the time of his termination. We conclude, however, that under *Davis* and *Arnett* public employees were entitled to "some kind of [pretermination] hearing." *See Davis,* 468 U.S. at 192 n. 10, 104 S.Ct. at 3018 n. 10, 82 L.Ed.2d at 148 n. 10. We hold that Walt had this "pre-*Loudermill*" type of hearing in the instant case [6] and thus the superior court correctly concluded that Commissioner Lyon had qualified immunity.

At this meeting Walt was afforded the opportunity to review the contents of both the *Tundra Times* article as well as John Schaeffer's letter. Walt was asked to verify the accuracy of the statements which were attributed to him in the documents, and in response he admitted that the substance of the comments was generally accurate. In short, there was no factual dispute raised concerning the content of either the article or the letter as they related to the statements attributed to Walt concerning the Red Dog mining venture.

While conceding that it is "likely disputed whether the subject of discipline was expressly mentioned either before or during the February 17, meeting" the state, correctly in our view, takes the position that "it was objectively apparent from the circumstances that a serious matter pertaining to Walt's employment was at hand."

IV. DID THE SUPERIOR COURT ERR IN HOLDING THAT WALT'S COMMON LAW, STATUTORY, AND PUBLIC POLICY TORT CLAIMS WERE BARRED BY THE COLLECTIVE BARGAINING AGREEMENT?

### A. *Common Law Tort Claims.*

In his second amended complaint Walt alleged that the defendants had a duty to exercise reasonable care to insure that just cause existed for his termination, and further alleged that defendants failed to exercise such care. As a consequence of defendants' breach of this duty, Walt asserted that he, his wife, and their minor child suffered extreme emotional distress, as well as other damages.

Walt argues that the court erred by holding that several of his common law tort claims were barred based on its finding that the collective bargaining agreement provided the exclusive remedy for damages resulting from his dismissal. The state responds that Walt is essentially "attempting to create recognition for a tort remedy in a breach of contract action" and that "he had already availed himself of the rights and relief available under the applicable contract, the collective bargaining agreement between the state and APEA." In short, the state's position is that any claim Walt has for damages is subsumed within the grievance remedy of reinstatement and back pay already afforded Walt under the terms of the CBA.

In its decision with regard to these claims, the superior court reasoned as follows:

Walt's employment rights are protected by a collective bargaining agreement between the state and APEA. The agreement specifies that it "shall be the sole method of settling" disputes between employees and employers. Art. 10 Sec. 1 of the Agreement Between the State and APEA Covering General Government Unit Employees, 1984–1986.... The grievance procedure provided for in the collective bargaining agreement is Walt's exclusive method of recourse in this matter. Thus, Walt's

causes of actions based on tort and contract claims are barred.

Although our reasoning is somewhat different, our assessment of the issue persuades us that the superior court did not err in granting the state's motion for summary judgment as to Walt's common law tort or damage claims.

In *Public Safety Employees Association v. State*, 658 P.2d 769 (Alaska 1983), we initially employed the following analysis to determine if arbitration was to be the exclusive remedy for a claim:

[A]s to each claim presented in this case we must determine whether it involves a dispute as to the meaning or application of the collective bargaining agreement. If such a dispute is involved, or if it is reasonably arguable that such a dispute is involved, then the claim would be arbitrable. The question in such cases then becomes whether arbitration is the exclusive remedy. If, on the other hand, a dispute as to the meaning or application of the agreement is not involved, the claim is not arbitrable at all. If there is no arbitration remedy, no question as to whether arbitration is the exclusive remedy arises.

*Id.* at 772–73 (footnote deleted).

Thus, the first determination that must be made is whether Walt's common law tort claims are arbitrable.

■ Walt argues the state stipulated that his tort claims were not arbitrable. Implicit in his argument is that the state, by agreeing the tort claims were not arbitrable, waived its right to arbitration of those issues. "[P]arties may mutually agree to forego arbitration." *Bolingbrook Park Dist. v. National–Ben Franklin Ins. Co.*, 96 Ill.App.3d 26, 51 Ill.Dec. 327, 420 N.E.2d 741, 743 (Ill.App.1981). Although the law favors arbitration, arbitration may be waived. *International Bhd. of Teamsters, Local 959 v. King*, 572 P.2d 1168, 1173 (Alaska 1977). Here the state agreed with Walt that his tort claims were not arbitrable. We thus conclude that the state waived its right to have the common

law tort claims heard before an arbitrator.[7] Given this conclusion, we must determine whether Walt's alleged common law tort claims are viable apart from the remedies he has been afforded pursuant to the collective bargaining agreement.[8]

■ We agree with the state's observation that Walt's alleged common law tort of negligent failure to exercise reasonable care in investigating whether grounds existed for his termination is an attempt to change a claim for breach of contract into a tort claim. We hold that there is no common law tort for negligent investigation in a public employer-employee context. In *Stevens v. State,* 746 P.2d 908, 912 n. 5 (Alaska 1987), we said:

> We believe that, in general, the state does not owe its citizens a duty of care to proceed without error when it brings legal action against them.[9]

To the extent that Walt has attempted to allege a tort based on a bad faith, unfair discharge we similarly conclude that such allegations give rise to a breach of contract action but not to a common law tort action.[10]

### B. Tort Claim Grounded on Statute.

■ Walt argues on appeal that he is entitled to bring a tort claim based on the state's alleged violation of AS 39.25.-160(f)[11]. We reject Walt's arguments and hold that no sufficient justification has been advanced which persuades us that a tort cause of action grounded on AS 39.25.-160(f) should be recognized.

Even if AS 39.25.160(f) were applicable here, the legislature has not evinced an intent to create an additional tort remedy for violation of this statute.[12] Further, we agree with the state's position that AS 39.25.160(f), in the factual context of this litigation, has been superseded by the Public Employment Relations Act (PERA) (AS 23.40.070–.260) and the CBA. The former authorized unions for state employees; the latter recognized APEA as the exclusive employee bargaining agent and incorporated the standard of just cause for employee discipline.[13]

### C. Tort Claim Implied from Violation of Public Policy.

In Count XI of his second amended complaint, Walt alleged that he was terminated

---

7. The state agreed with Walt that he could not raise claims for such "extra-contractual" damages in arbitration. As stated by the state:
   Defendants agree with plaintiffs that the grievance process is not the place for resolving damages claims for torts or constitutional/42 U.S.C. § 1983 violations.
   As stated by Walt's counsel:
   Ms. Cox I believe discussed the matter with other state officials and when we next spoke, she agreed that such items were outside the scope of the APEA contract and that it would not be necessary to present the matter to the arbitrator for a decision.

8. Although Walt argues that the viability of his damages claims are not before us, and that the only issue presented is whether his causes of action are barred by the CBA, we may sustain the superior court's summary judgment decision if there is another basis in law to do so. *Carlson,* 598 P.2d at 973.

9. This court has never previously recognized a tort action for wrongful discharge. *Knight v. American Guard & Alert, Inc.,* 714 P.2d 788, 792 (Alaska 1986); *State v. Haley,* 687 P.2d 305, 318 (Alaska 1984); *Mitford v. DeLasala,* 666 P.2d 1000, 1006–07 (Alaska 1983); *Eales v. Tanana Valley Medical–Surgical,* 663 P.2d 958, 959 (Alaska 1983).

10. In his second amended complaint Walt alleged that the defendants' actions in discharging him were malicious, wanton, and taken with reckless indifference to the rights of others.

11. Alaska Statute 39.25.160(f) provides in relevant part:
    In addition, action affecting the employment status of an employee in the classified service, including appointment, promotion, demotion, suspension, or removal, may not be taken or withheld for a reason not related to merit.

12. *See* Restatement (Second) of Torts § 874A comment h (1977). The legislature enacted an administrative grievance mechanism for discharged employees. *See* AS 39.25.170(a). *Titus v. State,* 451 P.2d 342 (Alaska 1969); *Whaley v. State,* 438 P.2d 718 (Alaska 1968). In AS 39.25.-170(b) the legislature provided for the remedy of reinstatement with back pay and leave benefits.

13. *Public Safety Employees' Association v. State,* 658 P.2d 769 (Alaska 1983) is distinguishable. There Alaska's version of the Uniform Residential Landlord and Tenant Act explicitly provided for injunctive relief and liquidated damages as well as special damage remedies, all of which an arbitrator could not grant.

from state employment for reasons contrary to public policy.[14] The state contends that there is no cause of action for wrongful discharge in violation of public policy for other than "at-will" employees.[15]

Courts have split as to whether an administrative or grievance procedure should preclude an implied or independent tort cause of action based on a violation of public policy. *See Bush v. Lucas,* 462 U.S. 367, 368, 103 S.Ct. 2404, 2406, 76 L.Ed.2d 648, 651 (1983) ("[b]ecause [petitioner's nonstatutory damages claims arising out of violation of his first amendment rights] arise out of an employment relationship that is governed by comprehensive procedural and substantive provisions giving meaningful remedies against the United States ... it would be inappropriate for us to supplement that regulatory scheme with a new judicial remedy"); *Cox v. United Technologies, Essex Group, Inc.,* 240 Kan. 95, 727 P.2d 456, 459 (1986) ("[t]he public policy of Kansas does not require that the tort of retaliatory discharge ... be extended to include employees covered by a collective bargaining agreement"); *Phillips v. Babcock & Wilcox,* 349 Pa.Super. 351, 503 A.2d 36, 38 (1986) ("an action for the tort of wrongful discharge is available only when the employment relationship is at will"); *Melley v. Gillette Corp.,* 19 Mass.App. 511, 475 N.E.2d 1227 (1985) (comprehensive remedial statute providing for administrative and judicial remedies, and operating against age discrimination, precluded creation of new common law action based on public policy expressed in the statute) *aff'd,* 397 Mass. 1004, 491 N.E.2d 252 (1986). *Compare Midgett v. Sackett–Chicago, Inc.,* 105 Ill.2d 143, 85 Ill.Dec. 475, 473 N.E.2d 1280 (1984) (holding employees subject to collective bargaining agreement could bring a tort action for retaliatory discharge), *cert. denied,* 474 U.S. 909, 106 S.Ct. 278, 88 L.Ed.2d 243 (1985), *cert. denied,* 472 U.S. 1032, 105 S.Ct. 3513, 87

L.Ed.2d 642 (1985), *leave to appeal granted and aff'd on other grounds sub nom. Gonzalez v. Prestress Eng'g Corp.,* 115 Ill.2d 1, 104 Ill.Dec. 751, 503 N.E.2d 308 (1986); *Lally v. Copygraphics,* 173 N.J.Super. 162, 413 A.2d 960 (1980), *aff'd,* 85 N.J. 668, 428 A.2d 1317 (1981) (holding administrative remedial provisions provided under statute for retaliatory discharge, which included back pay and reinstatement, did not preclude judicial action for both compensatory and punitive damages).

Courts that have declined to imply a cause of action or find an independent tort based on contravention of public policy reason that where the legislature provides a comprehensive remedial scheme, a cause of action should not be implied from a constitution or statute. In *Bush,* the Supreme Court found that a cause of action should not be implied for violations of the first amendment rights of a federal employee because comprehensive civil service remedies were provided by Congress. 462 U.S. at 368, 103 S.Ct. at 2406, 76 L.Ed.2d at 651. In reaching this conclusion the Supreme Court emphasized that in creating the remedies involved, Congress had carefully balanced the need for governmental efficiency with the rights of employees. *See id.* at 388–89, 103 S.Ct. at 2416–17, 76 L.Ed.2d at 664. Elaborate procedures were provided which included a trial type hearing and subsequent judicial review. *Id.* at 387, 103 S.Ct. at 2416, 76 L.Ed.2d at 663. If the employee prevailed he or she was entitled to reinstatement with retroactive seniority, full back pay, including credit for periodic within-grade or step increases and general pay raises during the relevant period, allowances, differential and accumulated leave. *Id.* at 388, 103 S.Ct. at 2416–17, 76 L.Ed.2d at 663. The Court declined " 'to create a new substantive legal liability without legislative aid and as at the common law,' because we are convinced that Congress is in a better position to decide

---

**14.** More particularly, Walt alleged that his employment duties required him to provide accurate and sound advice to small businesses in Alaska. He maintains that he was terminated from state employment "for doing just that rather than misleading small businesses."

**15.** In support of its position the state cites *Brockmeyer v. Dun & Bradstreet,* 113 Wis.2d 561, 335 N.W.2d 834, 837–40 (1983).

whether or not the public interest would be served by creating it." 462 U.S. at 390, 103 S.Ct. at 2417–18, 76 L.Ed.2d at 665 (quoting *United States v. Standard Oil Co.,* 332 U.S. 301, 67 S.Ct. 1604, 91 L.Ed. 2067 (1947) (citation omitted)).

Similarly, although not in a civil service context, the court in *Melley* declined to imply a common law remedy for conduct that contravened the public policy against age discrimination set forth in a Massachusetts age discrimination statute. The court held that the plaintiff could not bypass the procedures and provisions of that statute. 475 N.E.2d at 1228. It reasoned that the rationale for implying a private remedy—that there was no other way to vindicate the public policy—did not apply because "the public policy against age discrimination is already protected by a comprehensive legislative scheme...." *Id.* The statute provided for an initial remedy of conference, conciliation, and persuasion by the Massachusetts Commission Against Discrimination to eliminate the unlawful practices, then permitted suit. *Id.* The court concluded that the litigant had to exhaust her administrative remedies before such suit could be brought. *Id.* at 1228–29. Finally, the statute provided specific remedies including damages, injunctive relief, and attorney's fees. *Id.* at 1229.

█ In deciding this issue in the case at hand, the superior court employed the following analysis:

> Walt asks this court to imply a constitutional cause of action. The Alaska Supreme Court has expressly declined to rule on whether a cause of action can be implied from the alleged violation of constitutional provisions in such a case. [*State v. Haley,* 687 P.2d 305, 317–18 (Alaska 1984)].

In *Bush v. Lucas,* 462 U.S. 367, [103 S.Ct. 2404] 76 L.Ed.2d 648 (1983), the unanimous Supreme Court concluded that it would be inappropriate to imply a cause of action for violation of an employee's constitutional rights when there is a comprehensive scheme available for redressing the employee's grievances. The court was cognizant of the possibility that the administrative remedy might not fully compensate an employee or be as effective as a cause of action for damages. The court declined, however, to create a new judicial remedy, finding it more appropriate for resolution by Congress. The same analysis can be applied to Alaska state employment procedures. The legislature has found it appropriate to set up an administrative system for handling employee/employer problems for employees covered by collective bargaining agreements or administratively adopted personnel rules. AS 23.40.070–.260 (Public Employees' [sic] Relations Act); AS 22.20.037 (judicial employees' merit system); AS 39.25.010–39.26.020 (State Personnel Act). Whether it is appropriate to provide a constitutional cause of action in addition to the administrative remedies available should be for the legislature to determine. This court will not imply the existence of such a cause of action.

We agree with the superior court's analysis and in particular with its reliance on the Supreme Court's decision in *Bush.*[16] We therefore conclude that in the factual context presented by this record, it would be inappropriate to imply or to recognize an intentional tort cause of action on Walt's behalf based on a violation of public policy, statute, or the Alaska or Federal Constitutions.[17]

**16.** We think *Bush* is analogous to the instant case. Here elaborate protections were made available to Walt under the provisions of the CBA, PERA, and, to the extent applicable, the provisions of Alaska's State Personnel Act and Personnel Rules. Taken together the foregoing provide a comprehensive scheme of employee rights and remedies. Recognition of an independent tort for violation of public policy would in our view conflict with the established law of public employee-employer labor relations in Alaska.

**17.** *Compare Morris v. City of Soldotna,* 553 P.2d 474, 477 & n. 6 (Alaska 1976) *with Plancich v. State,* 693 P.2d 855, 859 & n. 9 (Alaska 1985). Under the Restatement (Second) of Torts § 874A (1979):

> When a legislative provision protects a class of persons by proscribing or requiring certain conduct but does not provide a civil remedy

### D. *Punitive Damages.*

█ Since Walt asserts no recognizable tort claims, his request for punitive damages cannot withstand summary judgment. The *Restatement (Second) of Contracts*, § 355 comment a (1981) provides:

> The purposes of awarding contract damages is [sic] to compensate the injured party.... For this reason, courts in contract cases do not award damages to punish the party in breach or to serve as an example to others unless the conduct constituting the breach is also a tort for which punitive damages are recoverable.

In *Wien Air Alaska v. Bubbel,* 723 P.2d 627, 631 n. 4 (Alaska 1986), we adopted the Restatement's position.[18]

### V. DID THE SUPERIOR COURT ERR IN GRANTING SUMMARY JUDGMENT ON THE ISSUE OF RETALIATORY DISCHARGE?

On June 10, 1985, Walt's second amended complaint was filed. In it he alleged that, subsequent to his reinstatement and over the objection of the director of his section, funding for his position was eliminated in retaliation for his filing suit and using grievance procedures. The state admitted that the budget passed by the legislature for fiscal year 1986 included funding for only two development specialists in Anchorage and for the director of the section in Juneau, but denied that the development specialist position in Juneau was being eliminated for fiscal year 1986. The court granted summary judgment in favor of the state "on all counts" on October 28, 1985.[19] Since the superior court decided that Walt's tort and contract causes of action were barred because the collective bargaining agreement was the exclusive remedy, we can assume that the superior court also intended to bar Walt's retaliatory discharge claim.[20]

█ Walt argues that when the state moved for summary judgment, it did not request summary judgment as to the claim for retaliatory discharge and therefore he was under no obligation to raise genuine issues of fact. Regardless of whether there were disputed facts related to the claim, if the superior court found as a matter of law that the CBA was the exclusive remedy for tort claims, factual issues surrounding the alleged retaliatory discharge tort claim would be irrelevant. Moreover, "a court may properly grant summary judgment on a ground other than that assigned in the motion, where it is clear that there is no genuine issue of material fact." 6 J. Moore, W. Taggart and J. Wicker, *Moore's Federal Practice,* ¶ 56.14[1] at 56–354–55 (1987). Thus, we hold that the superior court did not err in granting summary judgment on a claim not explicitly addressed by the state in its sum-

for the violation, the court may, if it determines that the remedy is appropriate in furtherance of the purpose of the legislation and needed to assure the effectiveness of the provision, accord to an injured member of the class a right of action, using a suitable existing tort action or a new cause of action analogous to an existing tort action.

In *Morris* this court refused to imply a cause of action based on the Safe Place to Work Act, which provided for civil fines and criminal sanctions, and the General Safety Code. 553 P.2d at 477. Neither statute provided for an award of civil damages. *Id.* In *Plancich* this court implied a cause of action based on a statutory provision which required the state to maintain seaplane landing facilities, 693 P.2d 858–59, based on the statute's express requirements that airport facilities "shall be at all times available for the use of and accessible to the general public." *Id.* at 858 (quoting AS 02.15.-120).

**18.** Because there is no independent common law tort claim for negligent investigation in a public employer-employee context, Walt has no basis for claiming emotional distress damages on behalf of his wife, his minor child, and himself, arising from his discharge from state employment.

**19.** The superior court's orders of October 28, 1985, and November 25, 1985, did not specifically address Walt's retaliatory discharge claim.

**20.** Walt contends that he has a viable tort claim for retaliatory discharge based on the reasoning of *Midgett v. Sackett–Chicago, Inc.,* 105 Ill.2d 143, 85 Ill.Dec. 475, 473 N.E.2d 1280 (1984).

mary judgment motion.[21]

AFFIRMED.

---

**21.** At the time the superior court entered its judgments of October 28, 1985, and November 25, 1985, Walt was still employed as a Specialist II in the DCED. As to any subsequent termination, the state concedes that such action "would be fully reviewable as a matter of contract in the collective bargaining forum."