Junius K. TREMPS, Plaintiff-Appellee,

v.

ASCOT OILS, INC., and James R. Cunningham, Defendants-Appellants.

No. 77–1206.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 24, 1977.

Decided July 12, 1977.*

---

\* This appeal was originally decided by unreported order on July 12, 1977. See Circuit Rule 35.

The panel has subsequently decided to issue the decision as an opinion.

Michael F. Linz, Dallas, Tex., for defendants-appellants.

James A. McDermott, Indianapolis, Ind., for plaintiff-appellee.

Before CASTLE, Senior Circuit Judge, and PELL and BAUER, Circuit Judges.

CASTLE, Senior Circuit Judge.

Defendants Ascot Oils, Inc. ("Ascot"), a Louisiana corporation, and James R. Cunningham, Sr., a Louisiana resident who controls Ascot, appeal from an order of the district court holding them jointly and severally liable to plaintiff for amounts paid to Ascot for interests in 11 oil and gas leases. Ascot offered and sold the interests to plaintiff's settlor, the Hon. Paul H. Buchanan, Jr., an Indiana citizen, over a period from May, 1973, to March, 1974, but it did not register the interests under the Indiana Securities Law, Ind.Code § 23-2-1-1 *et seq.* (Ind.Ann.Stat. § 25-854 *et seq.*, Burns, 1972). In October, 1974, Buchanan and his wife executed an assignment reconveying the interests to Ascot and tendered both the assignment and a sum covering amounts received as income from the interests to Ascot's lawyer. In April, 1975, Buchanan assigned to plaintiff, as trustee of a trust of which Buchanan was principal beneficiary, all causes of action that Buchanan had against Ascot and Cunningham. Plaintiff, a citizen of Indiana, brought the instant suit alleging violation of both federal and Indiana securities laws.

The district court, resting jurisdiction on diversity of citizenship, entered summary judgment for plaintiff. It held that both Ascot and Cunningham were originally liable under the Indiana Securities Law for the offer and sale of unregistered securities. It also held that Ascot had accepted Buchanan's tender, that this acceptance created joint and several liability for the refund of the purchase price on the part of Ascot and Cunningham, and that it discharged their joint and several liability under the Indiana Securities Law. While we do not fully agree with the district court about the consequences of Ascot's acceptance of tender, we conclude that appellants' statutory liability remains an independent, viable ground for granting the relief that plaintiff seeks and we affirm the court's judgment on that basis.

Ascot and Cunningham raise eight challenges to the district court's holding. Only two require more than cursory attention. Cunningham asserts that the district court lacked *in personam* jurisdiction over him, and appellants together assert that the offers and sales of interests in three of the oil and gas leases were exempt from registration under the Indiana Securities Law. We reject both arguments.

## I.

### Cunningham

Cunningham asserts that the district court did not acquire *in personam* jurisdiction over him prior to its entry of summary judgment because he was never served with process. He claims that service was made on his son, James R. Cunningham, Jr., instead of himself.

In the original complaint, filed April 10, 1975, plaintiff named only Ascot as a defendant. In an amended complaint, filed May 9, 1975, plaintiff named as additional defendants, among others, "James R. Cunningham, Jr.," a resident of Shreveport, Louisiana, and Wes-Tex Land Co., Inc. ("Wes-Tex"), a Texas corporation. The amended complaint stated that Cunningham was the president of Ascot. It alleged that he was one of a group of individuals who participated in the offers and sales of the interests to Buchanan and who controlled Ascot. The summons served with the amended complaint identified the defendant merely as "James R. Cunningham." The United States marshal was directed to serve Cunningham at 353 Corinne Circle, Shreveport, Louisiana. However, the marshal stated in his return of service that he made service to D. J. Crenshaw, secretary to Cunningham, "after telephone call by subject who requested it be served."

Cunningham's counsel at oral argument conceded that the appellant had actual no-

tice of the lawsuit. The senior Cunningham resided at 353 Corinne Circle and presumably was the "subject" who requested that process be served on Crenshaw, who was both his secretary and his son's secretary. However, the appellant asserts that he could reasonably conclude that his son was the "James R. Cunningham" referred to in the summons and the amended complaint and that he, the senior Cunningham, was not obligated to answer. He relies on the fact that the amended complaint identified the defendant as "Jr." instead of "Sr." He also relies on the fact that his son was a resident of Shreveport and was president of Wes-Tex, a codefendant under the amended complaint.

 A defendant who is clearly identified by a summons and complaint and who has been served with those documents may not avoid the jurisdiction of the district court merely because he is incorrectly named in them. *United States v. A. H. Fischer Lumber Co.*, 162 F.2d 872 (4th Cir. 1947). Professor Moore has suggested that the test of whether a misnomer invalidates process should be whether, on the basis of an objective standard, it is reasonable to conclude that the plaintiff had that defendant in mind or whether the plaintiff "actually meant to serve and sue a different person." 2 J. Moore, Federal Practice ¶ 4.44, at 1295.52 (1975). Greater room for error might be permitted a defendant under a standard that invalidates process creating reasonable doubt or confusion about who the plaintiff intended to sue. Less room for error would be allowed under a standard that imposes on the defendant the burden of answering an ambiguous complaint with which he has been served to clear up any confusion about whether he is the intended defendant. We need not choose a standard in this case, because Cunningham's argument fails under the most liberal of them from the defendant's point of view. The amended complaint was not susceptible to any reasonable doubt or confusion about who it was the plaintiff intended to sue. James R. Cunningham, Jr., was not the president of Ascot. He did not own a controlling interest in that corporation. According to the junior Cunningham's deposition, he had no affiliation with Ascot other than the fact that his father "owned" it. Although the junior Cunningham was the president of Wes-Tex, he was not identified as such in the amended complaint. Viewing the summons and amended complaint as a whole, the senior Cunningham was clearly identified as the person the plaintiff intended to sue.

The decision of the senior Cunningham to have his son answer the complaint and not to answer the complaint himself was unreasonable.

A suit at law is not a children's game, but a serious effort on the part of adult human beings to administer justice; and the purpose of process is to bring parties into court. If it names them in such terms that every intelligent person understands who is meant, as is the case here, it has fulfilled its purpose; and courts should not put themselves in the position of failing to recognize what is apparent to everyone else.

*United States v. A. H. Fischer Lumber Co., supra* at 873. The district court acquired jurisdiction over the person of James R. Cunningham, Sr., when the summons and the amended complaint were served on his secretary at his request. The district court properly allowed the plaintiff to amend the complaint a second time to reflect the fact that the intended defendant was a "Sr." instead of a "Jr." Because the senior Cunningham was before the court at that time, no material prejudice resulted to his substantial rights by the amendment. Fed.R. Civ.P. 4(h).

 Cunningham also argues that the plaintiff failed to state a claim against him under the Indiana Securities Law because he did not cite in his complaint the specific provision that subjects a "controlling person" to joint and several liability with the seller of unregistered securities, Ind.Code § 23–2–1–19(b) (Ind.Ann.Stat. § 25–873(b), Burns, 1972). This argument is without merit. To state a claim under the Federal Rules of Civil Procedure, the plaintiff need

only set forth "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed.R.Civ.P. 8(a). The statement must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957). In the second amended complaint, plaintiff alleged that Ascot had offered and sold interests in the 11 oil and gas leases without having them registered under the Indiana Securities Law although registration was required in each instance. He also alleged that Cunningham controlled Ascot. These allegations were sufficient to give Cunningham fair notice of the claim against him and the ground upon which it rested. Citation of the specific provision of the Indiana Securities Law under which he was liable as a controlling person was unnecessary.

## II.

*Liability under the Indiana Securities Law*

Buchanan purchased fractional undivided interests in 11 oil and gas leases from Ascot. It is undisputed that these interests were "securities" within the meaning of the Indiana Securities Law, Ind.Code § 23–2–1–1(k) (Ind.Ann.Stat. § 25–854(k), Burns, 1972), and that Ascot did not register the securities in Indiana prior to its offers and sales of them to Buchanan. Section 507(a)(1) of the Indiana Securities Law, at the time these transactions took place, provided that

> [a]ny person who offers or sells a security in violation of [the registration requirement] . . . is liable to the person buying the security from him, who may sue . . . to recover the consideration paid for the security, together with interest . . . .

*Id.* § 23–2–1–19(a)(1).

▬ We first turn to and reject the appellants' assertion that plaintiff may not recover on the basis of Ascot's failure to

register the interests, because he did not plead or prove that Buchanan was unaware of Ascot's failure to register. This argument is based on a 1975 amendment of the Indiana Securities Law, which provides that liability be conditioned on the fact that the allegedly injured party "did not knowingly participate in the violation or who did not have, at the time of the transaction, knowledge of the violation . . . ." Ind.Code § 23–2–1–19(a) (Ind.Ann.Stat. § 25–873(a), Burns Supp., 1976). The amendment became effective on May 1, 1975, after the sales to Buchanan took place. It is a well-established rule that "absent a contrary legislative intent statutes should be given prospective effect only." *State v. Smith,* 260 Ind. 555, 559, 297 N.E.2d 809, 812 (1973). New legislation may be operative with respect to a pending proceeding where it does not impair or take away previously existing rights and does not deny a remedy for their enforcement but where it merely modifies the procedure to be used. *Hine v. Wright,* 110 Ind.App. 385, 395, 36 N.E.2d 972, 976 (1941). However, the change cited by the appellants limits the substantive right of a securities buyer to recover from a seller who has failed to register them. Under the terms of the unamended statute, the buyer could recover irrespective of whether he knew the securities were unregistered or not. Because Buchanan had that right as of the time he purchased the unregistered securities and because the amendment did not expressly take it away, it was unnecessary for the plaintiff to plead or prove Buchanan's lack of knowledge.

In three of the leases in which Buchanan purchased interests, Nelson # 1, Hughey # 1 and Pelter # 1, Ascot sold interests to a total of four, five and four persons respectively. Appellants assert that the offers and the sales of these interests were exempt under section 102(b)(13)(A) of the Indiana Securities Law. That section, at the time of the transactions in question,[1] exempted

> the offer, sale and assignment of fractional undivided interests in an oil, gas or other

---

1. This provision was amended in 1975 to exempt

the sale and assignment of fractional undivided interests in an oil, gas or other mineral lease . . . (A) to not more than fifteen [15] persons . . . .

Ind.Code § 23–2–1–2(b)(13) (Ind.Ann.Stat. § 25–855(b)(13), Burns, 1972).

This exemption expressly applies only to the "sale and assignment" of oil and gas lease interests and does not cover the "offer" of such interests. An "offer" of securities is separately defined conduct under the statute. *Id.* § 23–2–1–1(i)(2). An offer of securities alone violates the statute in the absence of registration or exemption, *id.* § 23–2–1–3, and an unlawful offer permits the offeree to recover any consideration paid for the securities, *id.* § 23–2–1–19(a)(1), (b). A literal application of section 102(b)(13)(A), however, would eliminate the practical benefit of the exemption from the seller's standpoint. It would apply only in the improbable and fortuitous circumstance that a prospective buyer, or small group of buyers, were to approach the holder of an oil and gas lease and were to acquire interests in the lease without eliciting an offer to sell. The exemption would serve primarily as a trap for the unwary prospective seller who might assume that the exemption created an opportunity to market oil and gas lease interests in Indiana on a limited basis free of registration.

 In construing the exemption, we are not necessarily bound by its literal terms. The primary object of our task "is to arrive at the intention of the Legislature . . . ." *Board of Com'rs v. Board of Com'rs*, 128 Ind. 295, 298, 27 N.E. 133, 135 (1891).

> The intent of a statute, as collected from an examination of the whole and all its parts, will prevail over the literal import of particular terms, and control its strict letter, when the letter would lead to injustice and contradiction.

*Lime City Bldg., Loan & Sav. Ass'n v. Black*, 136 Ind. 544, 555, 35 N.E. 829, 833 (1893). A reading of the statute as a whole convinces us that the Indiana Legislature intended the exemption to be a meaningful, if limited, opportunity to holders of oil and gas leases who wished to sell interests in the leases free of registration. Allowing the sale of such interests on a limited basis but prohibiting the offer of them in no apparent way advances the statute's purpose of protecting investors. We therefore conclude that offers necessary to effect a sale to not more than 15 persons are impliedly exempted by the provision.

To preserve the protective design of the statute, however, an exempted offer may not be permitted to exceed in scope or character the limits necessary to achieve an exempted sale. The registration requirement protects investors by making available to them certain information about the securities offered to them. The protective benefits of the statute are provided in the period between offer and sale, when a prospective buyer is contemplating purchase of the security. If an offer to a large number of persons were held to be exempt merely because a few persons ultimately accepted the offer, the protective aim of the statute would be impaired. The type of exempted offer that may be fairly inferred from the statute is one that is designed to effect a sale to not more than 15 persons. To establish an exemption for an offer under section 102(b), it is therefore necessary to show that the offer could not have resulted in a sale to more than 15 persons.

Although the offers of interests in Nelson # 1, Hughey # 1 and Pelter # 1 were characterized as "private offerings" in the material Ascot sent to Buchanan, the record does not disclose the number of persons to whom offers with respect to each lease were made. Indeed, Ascot declined to identify the persons to whom offers were made when requested to do so by plaintiff in his preliminary interrogatories. In Nelson # 1, Ascot offered interests in fractions of $\frac{1}{64}$ to investors, but the record does not clearly indicate how many of the interests were offered. In Hughey # 1, Ascot offered 25 interests in fractions of $\frac{1}{64}$ to in-

---

mineral lease . . . (i) to not more than fifteen [15] persons . . . .

Ind.Code § 23–2–1–2(b)(13) (Ind.Ann.Stat. § 25–855(b)(13), Burns Supp., 1976).

vestors. In Pelter # 1, Ascot offered 17 interests in fractions of ¼₄. In each case, Ascot could have sold interests under the terms of its offer to more than 15 persons.

The Indiana Securities Law expressly places the burden of proving entitlement to any exemption on the party claiming the benefits of the exemption. Ind. Code § 23–2–1–16(j) (Ind.Ann.Stat. § 25–870(j), Burns, 1972). On June 4, 1976, plaintiff filed a motion for summary judgment, asserting that none of the interests offered and sold by Ascot to Buchanan was exempt from registration under the Indiana Securities Law. Rule 10 of the district court requires any party opposing a motion for summary judgment to file within 15 days of the motion any affidavits or other documentary material controverting the movant's position and a "statement of genuine issues" of material fact. General Rules of the United States District Court for the Southern District of Indiana, Rule 10. Appellants did not file anything in response to plaintiff's motion for summary judgment. They consequently failed to meet their burden of proving entitlement to an exemption under section 102(b)(13) for Ascot's offer of interests in Nelson # 1, Hughey # 1 and Pelter # 1.

## III.

### Acceptance of Tender

The district court based its holding that Ascot and Cunningham were jointly and severally liable to plaintiff on a finding that Ascot had accepted a tender of the lease interests from Buchanan. Tender of unregistered securities and any income received on them to the seller is a prerequisite to recovery by a buyer under section 507(a)(1). Ind.Code § 23–2–1–19(a)(1) (Ind.Ann.Stat. § 25–873(a)(1), Burns, 1972). Buchanan's lawyer, James A. McDermott, carried an assignment of the lease interests and a sum covering income received on them to the office of Ascot's lawyer, John A. Spinuzzi, in Dallas, Texas. Spinuzzi acknowledged Buchanan's tender and stated that he would inform McDermott on or before November 15, 1974, about whether Ascot would accept or reject the tender. Spinuzzi mailed the assignment and the sum tendered back to McDermott on May 14, 1975, about a month after the original complaint in this action was filed. McDermott immediately returned the assignment and sum to Spinuzzi with a letter stating that Ascot had accepted Buchanan's tender by failing to notify Buchanan of its rejection by November 15, 1974.

It is undisputed that Buchanan met the tender requirement for the purpose of obtaining recovery under section 507(a)(1). However, Ascot and Cunningham challenge the district court's holding that they are liable to plaintiff on the basis of an acceptance of tender by Ascot. Specifically, they contend (1) that plaintiff may not recover on a breach-of-contract theory when none was stated in the complaint; (2) that Cunningham cannot be held liable on the basis of an acceptance of tender by Ascot; and (3) that Spinuzzi lacked authority under Texas law to enter into a contract on Ascot's behalf.

We need not address these questions. Because Ascot and Cunningham are liable under the Indiana Securities Law for the full amount claimed by plaintiff, an acceptance of tender by Ascot has no apparent legal significance in this case. We reject the district court's conclusion that Ascot's acceptance of tender constituted an accord and satisfaction of the plaintiff's claims under the Indiana Securities Law. "An accord is an agreement to compose or settle, and the satisfaction is the execution of the agreement." *Karvalsky v. Becker*, 217 Ind. 524, 533, 29 N.E.2d 560, 563 (1940). Assuming for present purposes that Spinuzzi's failure to timely reject Buchanan's tender constituted an accord, it is nevertheless clear that the contract created has not been executed. Buchanan's tender implied an offer to rescind the contracts by which he purchased the lease interests and to accept the consideration he had paid for them. While Ascot may have impliedly agreed to rescind the contracts by failing to reject the tender, it has not repaid Buchanan the consideration it received from the sales. An accord without satisfaction does not discharge the original obligation. *Karvalsky*

*v. Becker, supra; Jackson v. Olmstead*, 87 Ind. 92, 94 (1882); 6 A. Corbin, Contracts § 1269 at 76 (1951).[2] The statutory liability of Ascot and Cunningham therefore was not extinguished by Ascot's acceptance of tender. Ascot and Cunningham remain jointly and severally liable to plaintiff under the Indiana Securities Law.

Finally, appellants assert that the district court improperly awarded attorneys' fees on the basis of its finding that Ascot had breached the "tender contract." An award of reasonable attorneys' fees is authorized by section 507(a)(1) of the Indiana Securities Law, Ind.Code § 23–2–1–19(a)(1) (Ind.Ann.Stat. § 25–873(a)(1), Burns 1972), under which we have determined the appellants were and still remain liable. The award was a proper exercise of the court's power under that section.

### IV.

*Conclusion*

For the reasons stated above, the judgment of the district court is affirmed.

AFFIRMED.

**2.** If the Indiana courts were to look to the law of Texas to resolve this question, they would find the same rule. *See Gulf, C. & S. F. Ry. v. Gordon*, 70 Tex. 80, 7 S.W. 695 (1888); *Camden Fire Ins. Ass'n v. Baird*, 187 S.W. 699, 700 (Tex.Civ.App.1916).