Theodore P. THOMA, Appellant,

v.

Walter J. HICKEL, Appellee.

No. S–6273.

Supreme Court of Alaska.

Aug. 15, 1997.

Rehearing Denied Dec. 8, 1997.

James McGowan, Sitka, Richard Friedman, John A. Bernitz, Friedman, Rubin & White, Anchorage, for Appellant.

John B. Gaguine, Assistant Attorney General, Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before RABINOWITZ,* MATTHEWS and EASTAUGH, JJ., and CARPENETI, Justice pro tem.**

*OPINION*

MATTHEWS, Justice, joined by EASTAUGH, Justice, as to parts I, II, II.B, II.C, and IV; and by RABINOWITZ, Justice, and CARPENETI, Justice pro tem., as to parts I, III.A, III.C, and IV.

Theodore P. (Chip) Thoma sued Governor Walter J. Hickel, alleging that Hickel in concert with others had engaged in a smear campaign against Thoma, that the campaign improperly used criminal justice system records, and that the campaign was conducted in retaliation for Thoma's protected political

* Sitting by assignment made under to article IV, section 11 of the Alaska Constitution and Administrative Rule 23(a).

** Sitting by assignment made under article IV, section 16 of the Alaska Constitution.

activity seeking the removal of Governor Hickel. The superior court ruled that Hickel was protected by the doctrine of public executive immunity and granted him summary judgment. Subsequently, the court awarded Hickel $77,865.50 in attorney's fees.

■ In reviewing grants of summary judgment the facts are to be viewed in the light most favorable to the losing party, and reasonable inferences are to be resolved in favor of the losing party.[1] Our recitation of the facts in this case is made from that perspective.

Thoma, who describes himself as a political gadfly, filed an ethics complaint against Governor Hickel on May 3, 1991, which alleged that Hickel was attempting to use his official position for personal financial gain. Hickel discussed with his aides ways of retaliating against Thoma. They decided that Thoma's criminal record should be publicized.

The record of the Alaska Public Safety Information Network (APSIN), a computer system which contains comprehensive criminal records, indicates that inquiries were made concerning Thoma's criminal history on May 7 and May 9, 1991. The record does not show who made the inquiries. A printout of Thoma's criminal record was circulated among the governor's aides.

After Thoma filed the ethics complaint against Hickel, he involved himself in an effort to recall the governor. In September of 1991, the Alaska chapter of the Sierra Club endorsed the recall effort. On September 20, 1991, Governor Hickel's press secretary, Eric Rehmann, sent a letter to the Alaska representative of the Sierra Club which stated in part:

> By joining the recall effort, you have aligned yourself with disreputable characters like Chip Thoma. Mr. Thoma, who proclaims himself to be an environmental activist, is a convicted felon who has spent time in jail for possession of cocaine. He has been found guilty of driving while intoxicated four times in a ten-year period. This is hardly a pillar of our community with whom your organization should wrap themselves around.

Thoma's convictions are a matter of public record. The court records in Juneau show two DWI convictions in 1979 and a 1985 cocaine conviction. Thoma was convicted of two additional DWIs in Oregon. While the out-of-state convictions are public, they are not reflected in the Alaska court records. The convictions are, however, in Thoma's APSIN file. Certain members of Governor Hickel's staff had access to the APSIN file. Thus, there is inferential evidence that the APSIN file was the source of the information contained in Rehmann's letter concerning Thoma's four DWI convictions.

Thoma sued Hickel in the superior court in Juneau, asserting claims under 42 U.S.C. § 1983 (deprivation of federal rights), public policy violations under state law, and interference with state and federal constitutional rights. Compensatory damages for reputational losses and emotional distress were sought and a claim for punitive damages was asserted.

After Thoma took the deposition of one of the governor's former aides, Hickel moved for summary judgment, arguing that the claims against him should be dismissed under the doctrine of public executive immunity. Thoma made a cross-motion for partial summary judgment on Hickel's immunity defense. The superior court ruled in Hickel's favor.

## I. Public Executive Immunity from Tort Suits

■ Under Alaska law, public officials in the executive departments of government have either absolute or qualified immunity from tort suits for discretionary acts committed within the scope of their authority. Absolute immunity is self-descriptive. Qualified immunity protects an official whose acts "are done in good faith and are not malicious or corrupt." *Aspen Exploration Corp. v. Sheffield*, 739 P.2d 150, 158 (Alaska 1987). Immunity is determined to be absolute, or merely qualified, based on the consideration of factors which are designed to "strike a balance between the public's interest in efficient, unflinching leadership [which is

---

1. *Walt v. State*, 751 P.2d 1345, 1348 n. 2 (Alaska 1988).

thought to be furthered by absolute immunity] and the interests of maliciously injured parties [which are redressable where an immunity is merely qualified]." *Id.* at 159. The factors which should be considered in striking this balance are:

(1) The nature and importance of the function that the officer performed to the administration of government (i.e. the importance to the public that this function be performed; that it be performed correctly; that it be performed according to the best judgment of the officer unimpaired by extraneous matters);

(2) The likelihood that the officer will be subjected to frequent accusations of wrongful motives and how easily the officer can defend against these allegations; and

(3) The availability to the injured party of other remedies or other forms of relief (i.e. whether the injured party can obtain some other kind of judicial review of the correctness or validity of the officer's action).

*Id.* at 159–160.

In applying these factors in *Aspen Exploration*, we found that absolute immunity protected Governor Sheffield from claims that he had wrongfully ordered the State Department of Natural Resources to reject the plaintiff's applications for offshore prospecting permits. The governor "must feel unimpaired to direct [state officers] in the way he determines best ... particularly ... where the state's natural resources are concerned...." *Id.* at 160. Further, allowing inquiry into motive concerning rejection of a permit application would entail a lengthy and disruptive trial. Moreover, a well-marked path through administrative and judicial channels had been established as a remedy for unsuccessful permit applicants. *Id.* at 161–162. By contrast, we held that the plaintiff's claim for defamation was merely subject to qualified immunity. "[H]olding the governor to a standard of good faith in his public statements more than adequately protects the public interest in undeterred leadership," *id.* at 160–61; permitting inquiry into motive in defamation cases would not necessitate lengthy trials, *id.* at 161; and

there are no alternative remedies available to one who has been defamed. *Id.* at 162.

 Federal law also recognizes absolute and qualified official immunity from tort suits. Certain officials having special functions are entitled to absolute immunity for all acts within the scope of their protected functions. Prosecutors, judges (including executive officers performing adjudicative functions), and legislators fall within this category. *Harlow v. Fitzgerald,* 457 U.S. 800, 807, 102 S.Ct. 2727, 2732, 73 L.Ed.2d 396 (1981). In addition, the President of the United States has status-based absolute immunity. *Nixon v. Fitzgerald,* 457 U.S. 731, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1981). Most executive officers, however, have qualified immunity. Qualified immunity under federal law protects officials except where it is "clearly established" as of the time of the acts complained of that the acts violated the plaintiff's rights. *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738.

## II. *Thoma Has Not Asserted a Valid Federal Claim*

One of the purposes of qualified immunity is to protect public officials from the expense of litigation. *A.C.L.U. of Maryland v. Wicomico County,* 999 F.2d 780 (4th Cir.1993). Therefore, in a lawsuit in which qualified immunity is claimed, questions of immunity should be ruled upon at an early stage. Since, under federal law, the existence of qualified immunity depends on whether there is an underlying statutory or constitutional violation which can be described as clear, the first question that logically presents itself in such cases is whether the allegations of the complaint encompass any federal constitutional or statutory violations. As the Fourth Circuit said in *A.C.L.U. of Maryland:*

In order to weed out insubstantial section 1983 claims without resort to a trial or extensive pretrial proceedings, a trial court confronted with an assertion of qualified immunity should first determine whether the plaintiff has properly asserted a constitutional violation. *Siegert v. Gilley,* 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991). As a panel of the Eleventh Circuit has remarked:

The district courts should first focus on whether the plaintiff has established a constitutional violation before determining whether material issues of fact are present. No material issues can be in dispute where the plaintiff's evidence fails to establish a constitutional violation.

*Bennett v. Parker,* 898 F.2d 1530, 1534 (11th Cir.[1990] ) . . . .

A preliminary evaluation of the plaintiff's allegations may resolve the immunity question at an early point in the litigation. *See Anderson [v. Creighton],* 483 U.S. [635] 646 n. 6, 107 S.Ct. [3034] 3042 n. 6 [97 L.Ed.2d 523] (encouraging resolution of such claims at the "earliest possible stage"). If the plaintiff's allegations fail to establish a constitutional claim, the defendant is entitled to dismissal on the basis of qualified immunity, or, of course, under Federal Rule of Civil Procedure 12(b)(6).

*Id.* at 784.

■ Guided by this, we now consider whether Thoma has asserted any cognizable federal claims. On appeal Thoma limits his federal claims to those brought under 42 U.S.C. § 1983 (1994). This section provides in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

No substantive rights are created by section 1983. It merely provides a procedure by which rights already guaranteed by the federal constitution or a federal statute may be vindicated. *E.g., Baker v. McCollan,* 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 2694 n. 3, 61 L.Ed.2d 433 (1979) (Section 1983 is "not itself a source of substantive rights but a method

for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes."). Originally part of the Civil Rights Act of 1871, section 1983 was enacted to enforce the provisions of the Fourteenth Amendment in response to the need to protect the constitutional rights of black citizens in the South following the Civil War. However, in line with its plain language, section 1983 has been interpreted to extend beyond racial discrimination and to apply to violations of any substantive rights secured by the federal constitution or federal laws.[2]

### A. *The Retaliation Claim*

Thoma claims that people have a constitutional right to be free from acts of retaliation by officials made in response to speech or other activities protected by the First Amendment to the Constitution. There is much support for this proposition. For example, in *Mt. Healthy City School District v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), a non-tenured teacher was not rehired because, as he claimed, he had publicly criticized the school administration. The Supreme Court held that despite the fact that the teacher "could have been discharged for no reason whatever, and had no constitutional right to a hearing prior to the decision not to rehire him . . . he may nonetheless establish a claim to reinstatement if the decision not to rehire him was made by reason of his exercise of constitutionally protected First Amendment freedoms." *Id.* at 283, 97 S.Ct. at 574.

In *Gibson v. United States,* 781 F.2d 1334 (9th Cir.1986), the court held that an allegation that police helicopters frequently flew low over plaintiff's house in order to inhibit the plaintiff's nonviolent but confrontational political activities stated a claim under section 1983:

State action designed to retaliate against and chill political expression strikes at the heart of the First Amendment. . . . Although plaintiffs may not recover merely on the basis of a speculative "chill" due to

---

**2.** *See* Stephanie E. Balcerzak, *Qualified Immunity for Government Officials,* 95 Yale L.J. 126, 127

n. 6 (1985).

generalized and legitimate law enforcement initiatives ... they have alleged discreet acts of police surveillance and intimidation directed solely at silencing them. Hence, we conclude that they have stated a judicially cognizable claim of "specific ... objective harm" arising from the violation of their First Amendment rights.

*Id.* at 1338 (citations omitted).

Another example is found in *Soranno's Gasco, Inc. v. Morgan,* 874 F.2d 1310 (9th Cir.1989). Gasco, a fuel distributor, criticized the county air pollution control district publicly and filed suit against the district challenging various air pollution regulations. The district suspended certain permits held by Gasco and wrote letters to Gasco's customers telling them that Gasco could not deliver gasoline to them while he was under suspension. The district court dismissed Gasco's section 1983 claim, concluding that Gasco had no constitutionally protected property interest in the permits. *Id.* at 1314. The Ninth Circuit reversed, holding that "[i]f the plaintiffs can establish that the decision to suspend the permits was made because of Soranno's exercise of constitutionally protected rights, they have established a First Amendment violation, and are entitled to relief under section 1983.... [T]he Sorannos therefore need not establish a legally protected interest in the permits themselves." *Id.*

■ In *Soranno's* the official act of retaliation was cancellation of permits; in *Gibson* it was harassment with helicopters; in *Mt. Healthy* it was non-retention of a teacher. Here, the act of retaliation was a letter. As the letter was truthful, it is itself speech protected under the First Amendment. We have been cited to no case which holds that the federal constitutional tort of retaliation extends to retaliation by speech. We do not believe that imposing section 1983 liability on a public official who responds in kind to protected speech critical of the official would be consistent with the First Amendment. The First Amendment "was fashioned to assure unfettered interchange of ideas...." *New York Times, Co. v. Sullivan,* 376 U.S. 254, 269, 84 S.Ct. 710, 720, 11 L.Ed.2d 686 (1964) (quoting *Roth v. United States,* 354

U.S. 476, 484, 77 S.Ct. 1304, 1308, 1 L.Ed.2d 1498 (1957)). "It is a prized American privilege to speak one's mind although not always with perfect good taste, on all public institutions ... and this opportunity is to be afforded for 'vigorous advocacy' no less than 'abstract discussion.'" *Id.* The First Amendment is reflective of "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *Id.* at 270, 84 S.Ct. at 721. Debate is impossible where only one side can speak. Making public officials civilly liable for retaliatory speech would, in essence, convert the First Amendment model of an interchange into a one-way street. As we believe this would be fundamentally inconsistent with the values protected by the First Amendment, we conclude that no valid claim of retaliation has been asserted by Thoma.

**B.** *The Claim for Violation of Federal Regulations*

■ What remains is the question whether a section 1983 action may be maintained against Hickel based on a claim that he improperly obtained and used Thoma's APSIN file. The answer to this question is no. Thoma has relied on 28 C.F.R. § 20.21 which requires states using systems like APSIN to promulgate a plan which ensures "that dissemination of nonconviction data has been limited" to specified individuals and agencies. This regulation was not violated in this case as the letter to the Sierra Club made no reference to nonconviction data.

Further, even if a violation of this regulation were established, a section 1983 action could not be based on such a violation. In *Polchowski v. Gorris,* 714 F.2d 749 (7th Cir. 1983), a claim was brought based on a violation of the enabling statute underlying 28 C.F.R. § 20. That statute, 42 U.S.C. § 3789g(a) & (b), forbade the release of criminal history information obtained from the Justice Department.[3] Despite this prohibition, a police chief released information so obtained concerning a candidate for local of-

**3.** 42 U.S.C. § 3789g(a) & (b) provides: Confidentiality of information

fice. The court held that no section 1983 action could be maintained based on this release as the enabling statute "does not create an enforceable right to prevent the disclosure of criminal history information." *Id.* at 751.

*Cline v. Rogers,* 87 F.3d 176, 184 (6th Cir.1996), is similar to *Polchowski.* The court held that a county sheriff who had allegedly disclosed protected criminal history records to a private citizen was not subject to suit under section 1983. The court relied on the same rationale as *Polchowski,* reasoning that the underlying statute does not create a privately enforceable right of action, and stating that subsection (b) of 42 U.S.C. § 3789g "imposes compliance obligations only on a federal agency, not upon the defendants [non-federal officials]." *Id.* at 183.

We agree with the *Polchowski* and *Cline* decisions and conclude that no cause of action maintainable under section 1983 has been plead.

III. *Thoma Has a Claim for Violation of State Regulations But Not for Violation of the State Constitution*

▆ We turn to Thoma's state law claims. He asserts three tort theories based on (1)

(a) Research or statistical information; immunity from process; prohibition against admission as evidence or use in any proceedings

Except as provided by Federal law other than this chapter, no officer or employee of the Federal Government, and no recipient of assistance under the provisions of this chapter shall use or reveal any research or statistical information furnished under this chapter by any person and identifiable to any specific private person for any purpose other than the purpose for which it was obtained in accordance with this chapter. Such information and copies thereof shall be immune from legal process, and shall not, without the consent of the person furnishing such information, be admitted as evidence or used for any purpose in any action, suit, or other judicial, legislative, or administrative proceedings.

(b) Criminal history information; disposition and arrest data; procedures for collection, storage, dissemination, and current status; security and privacy; availability for law enforcement, criminal justice, and other lawful purposes; automated systems: review, challenge, and correction of information

All criminal history information collected, stored, or disseminated through support under

violation of his right to free speech, guaranteed by article I, section 5 of the Alaska Constitution; (2) violation of his right to privacy, guaranteed by article I, section 22 of the Alaska Constitution; and (3) violation of the state regulations governing use and distribution of APSIN information, 13 AAC 25.260 and .280. For the reasons that follow we hold that a claim may be based on a violation of the regulations, but claims may not be based on the other provisions.

A. *State Regulation Claim*

13 AAC 25.260 limits the dissemination of APSIN information "to law enforcement officers . . . for the purpose of the detection of crime and identification and apprehension of criminals." 13 AAC 25.280 prohibits the release of APSIN information to non-law enforcement officials "except upon order of a court of competent jurisdiction, issued for good cause shown and where [the information] will not be put to an improper use. . . ." In 1991 there was no explicit remedy provided for violation of these regulations.[4]

The Restatement (Second) of Torts § 874A (1979) provides:

this chapter shall contain, to the maximum extent feasible, disposition as well as arrest data where arrest data is included therein. The collection, storage, and dissemination of such information shall take place under procedures reasonably designed to insure that all such information is kept current therein; the Office of Justice Programs shall assure that the security and privacy of all information is adequately provided for and that information shall only be used for law enforcement and criminal justice and other lawful purposes. In addition, an individual who believes that criminal history information concerning him contained in an automated system is inaccurate, incomplete, or maintained in violation of this chapter, shall, upon satisfactory verification of his identity, be entitled to review such information and to obtain a copy of it for the purpose of challenge or correction.

4. In 1994 the legislature enacted AS 12.62.200, which allows a person "whose criminal justice information has been released or used in knowing violation of [regulations adopted under AS 12.62 including 13 AAC 25.260 and .280]" to bring an action for damages in superior court. This section does not govern this case as it was enacted after the events in question here. It does however reflect a legislative judgment that

When a legislative provision protects a class of persons by proscribing or requiring certain conduct but does not provide a civil remedy for the violation, the court may, if it determines that the remedy is appropriate in furtherance of the purpose of the legislation and needed to assure the effectiveness of the provision, accord to an injured member of the class a right of action, using a suitable existing tort action or new cause of action analogous to an existing tort action.

We have followed the rationale of this section in *Plancich v. State,* 693 P.2d 855, 859 (Alaska 1985) (tort action based on statutory duty to keep seaplane docks accessible to seaplanes); *see Walt v. State,* 751 P.2d 1345, 1353 n. 17 (Alaska 1988) (Restatement § 874A discussed). In our view the rationale of section 874A is applicable with respect to 13 AAC 25.260 and .280.

In the present case, unlike the situation in *Walt,* there is no remedial system of enforcement and thus no risk that the balance struck by the legislature in devising a remedial system might be skewed by permitting a private tort remedy. Further, it is evident that one purpose of the confidentiality provisions of sections .260 and .280 is to protect people whose APSIN files may contain damaging or embarrassing information from the injury that might result from the publication of those files. Thoma is a member of this class. Inferring a tort action from violations of sections .260 and .280 is, in our view, an appropriate way of enforcing their confidentiality provisions.

 Hickel argues that Thoma's complaint does not encompass an action based on violation of the state APSIN regulations. We disagree. The complaint alleges that Hickel's actions included "utilizing state criminal justice system resources to identify plaintiff's contacts with law enforcement entities in the criminal justice system ... in an effort to embarrass, discredit and punish" Thoma. These actions were alleged to violate state public policy. The only shortcoming of these allegations is that the regulations concerning the state criminal justice

enforcement of the regulations concerning AP-SIN through the mechanism of a private civil

system which express the state public policy were not specifically mentioned. This is not a fatal pleading defect. Under notice pleading, a complaint is sufficient when it reasonably informs the opposition of the nature of the claim. *See Tremps v. Ascot Oils, Inc.,* 561 F.2d 41, 44–45 (7th Cir.1977) (complaint need not state specific provision of securities law under which defendant was liable). Further, Thoma did specify the regulations on which he relied in his memorandum in support of his motion for partial summary judgment and in opposition to Hickel's motion for summary judgment. The memorandum stated:

Defendant also violated state law. 13 AAC 25.260 allows distribution of information only to the subject of the information and "to law enforcement officers ... for the purpose of the detection of crime and identification and apprehension of criminals." 13 AAC 25.280 states further that the information in the system is "confidential" and can be released to non-law enforcement personnel only "upon order of a court of competent jurisdiction, issued for good cause shown and where they will not be put to an improper use[.]" Defendant was not a law enforcement officer, did not have a court order, and was not using this information for proper purposes.

In response to Hickel's argument that Thoma waived any cause of action under the state regulations, Thoma answered as follows in his reply brief:

Thoma is not asserting a cause of action for violation of the regulations; he cites state regulations to show that his right to have APSIN used only for law enforcement purposes was clearly established. The cause of action is brought directly under the Alaskan Constitution, which was pled in the complaint.

The key element of Thoma's state constitutional tort claim based on violation of the APSIN regulations is that Hickel used information concerning Thoma obtained in violation of the APSIN regulations. Violation of the regulations is thus subsumed within Tho-

action is good public policy where there is a "knowing violation."

ma's state constitutional tort theories. As Hickel has pointed out, the availability of alternative, non-constitutional remedies is a basis for refusing to accept a constitutional tort theory. *E.g., Johnson v. Alaska Dep't of Fish & Game*, 836 P.2d 896, 909 n. 23 (Alaska 1991) (remedies available under AS 18.80); *State v. Haley*, 687 P.2d 305, 317–18 (Alaska 1984) (AS 09.50.250 furnished alternative remedies). In order to determine whether this ground exists as a defense to Thoma's state constitutional tort theories, the validity of the alternative remedy based on violation of the state regulations must be determined. Thus the merits of the tort remedy based solely on the regulations are clearly before us. The language from Thoma's reply brief quoted above does not suffice to require that we consider whether Thoma has a state constitutional tort action based on violation of the APSIN regulations since, as we hold, a direct tort action based on the regulations exists.

### B. State Constitutional Claim

■ Thoma's attempt at asserting tort claims based on state constitutional violations fails for a number of reasons. The claim based on the free speech clause, article I, section 5, lacks merit because as expressed above, a government official has a constitutionally protected right to speak, or write, in response to critical speech. Concerning Thoma's claim based on the constitutional right to privacy, Thoma has not established that publication of his APSIN file would violate article I, section 22. Further, given our decision that a private tort action may be maintained for violation of the APSIN regulations, a direct constitutional remedy would be superfluous.[5]

### C. Immunity for State Regulation Claim

■ The final question for resolution is whether Hickel is shielded by absolute immu-

nity from Thoma's claim for violation of the state APSIN regulations. We conclude that qualified rather than absolute immunity should govern this action. Our analysis of this point largely tracks that which we used concerning the defamation claim presented in *Aspen Exploration Corp. v. Sheffield*, 739 P.2d 150, 158 (Alaska 1987).

There is little or no utility in permitting a governor to consult APSIN records for non-law enforcement purposes. Governors are unlikely to be subjected to numerous charges that they have improperly referred to APSIN records and when such charges are made they are unlikely to result in lengthy trials. No alternative remedies exist in favor of a person whose confidentiality rights have been violated. *Id.* at 160–162. Imposing a rule of absolute immunity would run counter to the legislative judgment implicit in AS 12.62.200.[6] Finally, it is important that public officials be deterred from improperly using information which their office gives them access to.

In view of our decision on the merits, the appeal concerning attorney's fees is mooted.

### IV. Conclusion

Four justices have participated in the decision of this case. The court is evenly divided with respect to part II of the opinion, concerning whether valid federal claims have been asserted. A decision by an evenly divided court results in an affirmance. *City of Kenai v. Burnett*, 860 P.2d 1233 (Alaska 1993). Therefore, the decision of the superior court with respect to the federal claims is affirmed. Three justices concur in part III.A, concerning the state regulations claim. Therefore, the decision of the superior court is reversed with respect to the state regulations claim. Two justices concur in part

---

**5.** In reaching this conclusion we do not mean to imply that permitting a direct tort action for violation of state constitutional provisions would, in other circumstances, be appropriate. Direct tort actions for violation of certain provisions of the federal constitution have been recognized. The leading case is *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). We have neither adopted nor rejected

the *Bivens* approach with respect to state constitutional violations. *Vest v. Schafer*, 757 P.2d 588 (Alaska 1988). We have noted that federal courts have not permitted the *Bivens* remedy where alternative remedies are available. *See Dick Fischer Dev. No. 2, Inc. v. Department of Administration*, 838 P.2d 263, 268 (Alaska 1992).

**6.** *See supra* note 5.

III.B, relating to the state constitutional claim, and two justices would not reach this claim. This claim is therefore also affirmed by an evenly divided court. All justices concur in all other parts of the opinion not mentioned in this conclusion.

Accordingly, the judgment of the superior court is AFFIRMED regarding the federal claims and the state constitutional claim, REVERSED regarding the state regulations claim, and REMANDED for further proceedings consistent with this opinion.

CARPENETI, J. pro tem., dissenting in part, joined by RABINOWITZ, J.

EASTAUGH, J., dissenting in part.

COMPTON, C.J., not participating.

CARPENETI, Justice pro tem., with whom RABINOWITZ, Justice, joins, dissenting in part.

The court holds in Part II that Hickel is entitled to qualified immunity from this suit because Thoma failed to assert a valid claim under 42 U.S.C. § 1983, concluding that a § 1983 claim does not reach retaliation by speech because imposition of § 1983 liability would have a chilling effect on expression protected by the First Amendment. I dissent from this holding.

The court concludes that imposition of § 1983 liability on a public official who "responds in kind" to protected speech critical of the official would not be consistent with the First Amendment:

> Making public officials civilly liable for retaliatory speech would, in essence, convert the First Amendment model of an interchange into a one-way street. As we believe this would be fundamentally inconsistent with the values protected by the First Amendment, we conclude that no valid claim of retaliation has been asserted by Thoma.

Op. at 821.

By focusing on the vehicle for the retaliation, a letter, the court misinterprets the civil rights statute. Section 1983 only provides liability for conduct. Specifically, a § 1983 defendant is liable only for depriving a person of his or her federal rights under color of state law. See 42 U.S.C. § 1983 (1994). The defendant's speech is incidental and not the basis for the § 1983 violation.

The state action that forms the basis for Thoma's § 1983 claim is not the sending of a letter responding in kind to Thoma's complaints about Hickel's performance as governor. The violation of § 1983 in this case occurred when Hickel used his official access to the APSIN database for an unauthorized and unconstitutional purpose: to search for information about Thoma and publish it in order to discredit him in retaliation for Thoma's protected political speech.[1]

The court cites *Soranno's Gasco, Inc. v. Morgan,* 874 F.2d 1310, 1314 (9th Cir.1989), *Gibson v. United States,* 781 F.2d 1334, 1338 (9th Cir.1986), and *Mt. Healthy City School District v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977), for the well-established rule that an action under state authority in retaliation for the exercise of First Amendment rights establishes a claim under § 1983—even if the action, when taken for a different reason, would have been proper. The court then attempts to distinguish the conduct in these cases from the speech in the present case:

> In *Soranno's* the official act of retaliation was cancellation of permits; in *Gibson* it was harassment with helicopters; in *Mt. Healthy* it was non-retention of a teacher. Here, the act of retaliation was a letter. As the letter was truthful, it is itself speech protected under the First Amendment.

Op. at 821.

In attempting to distinguish these cases from the present case in this manner, the court ignores the fact that the letters sent to plaintiff's customers in *Soranno's* by the county air pollution district informing them that plaintiff's permits had been suspended

---

1. When reviewing a grant of summary judgment, all reasonable inferences of fact must be drawn in favor of the non-moving party. *Walt v. State,* 751 P.2d 1345, 1348 n. 2 (Alaska 1988). Where there is a factual dispute, the non-moving party's version of the facts is assumed correct. *Id.* For the purposes of this appeal, I assume that Thoma's version of the facts is true.

were also protected expression under the First Amendment, as was the letter from the school superintendent to the plaintiff in *Mt. Healthy* explaining why he would not be rehired. *See Soranno's,* 874 F.2d at 1316; *Mt. Healthy,* 429 U.S. at 574. However, the defendants' First Amendment rights in *Soranno's* and *Mt. Healthy* were not at issue because, as is true in the present case, it was the defendants' conduct, using their power as state officials to retaliate against an individual's exercise of free speech rights, that gave rise to their liability under § 1983. Hickel illegally ordered that the APSIN database be accessed and that confidential information found therein be published for the sole purpose of retaliating against Thoma for his exercise of his First Amendment rights. By focusing on Hickel's protected expression instead of his abuse of power, the court creates an illusory First Amendment dilemma.

The purpose of § 1983 is to provide a remedy for abuse of state authority in violation of federal law. *Soranno's,* 874 F.2d at 1314. In each of the cases cited by the court, a state actor used his or her official power for an improper purpose: to retaliate against an individual for the exercise of his or her First Amendment rights. In each case, the action taken would have been legal had it not been motivated by the desire to retaliate against the exercise of First Amendment rights.

In *Soranno's,* the county had the authority to suspend a permit if a permittee did not provide certain requested information. 874 F.2d at 1316. The plaintiffs did not provide information requested by the county, and therefore suspension was warranted. However, the court found that the suspension violated § 1983 if "the decision to suspend the permits was made because of Soranno's exercise of constitutionally protected rights." *Id.* at 1314.

In *Mt. Healthy,* the Supreme Court found that the plaintiff's employment was at will and could have been terminated at any time.

429 U.S. at 283, 97 S.Ct. at 574. However, the plaintiff established a § 1983 claim because the school's decision not to rehire him "was made by reason of his exercise of constitutionally protected First Amendment freedoms." *Id.* at 283–84, 97 S.Ct. at 574.

In *Gibson,* while the United States Court of Appeals for the Ninth Circuit held that the Los Angeles police had the authority to fly helicopters over residential neighborhoods, frequent flights at low altitude over the plaintiff's house to intimidate her and induce her to stop her political advocacy stated a § 1983 claim. *Gibson,* 781 F.2d at 1338.

These cases illustrate that the means of retaliation by a state actor is irrelevant so long as the retaliatory conduct is under color of state law and is substantially motivated by the exercise of the complainant's First Amendment rights.

Allowing a § 1983 claim in this case would not, as the court fears, subject public officials who respond to political speech "in kind" to § 1983 liability. Had Hickel's aide written a letter to the Sierra Club simply refuting Thoma's allegations, and suggesting that Thoma was not someone with whom the Sierra Club should align itself, a valid § 1983 claim would not lie, for Hickel would have been doing no more than exercising his First Amendment right.

In the present case, state personnel were authorized to access the APSIN database and publish conviction data obtained therein *only for law enforcement purposes.* 13 Alaska Administrative Code (AAC) 25.280. However, Hickel ordered his aides to obtain damaging information about Thoma through APSIN and publish it to discredit him in retaliation for Thoma's ethics charges and recall effort against Hickel. This constitutes the same kind of abuse of state authority designed to retaliate against and chill political expression found in the cases above. Therefore, I would hold that Thoma has stated a claim under § 1983 [2] and remand to the su-

**2.** After concluding that § 1983 does not apply to speech, the court turns to whether the illegal use and dissemination of confidential information from the APSIN file alone supports a § 1983 claim against Hickel. Op. at 821–822. The

court holds that pursuant to *Polchowski v. Gorris,* 714 F.2d 749, 751 (7th Cir.1983) and *Cline v. Rogers,* 87 F.3d 176, 184 (6th Cir.1996), the federal statute prohibiting the release of criminal history information for non-law enforcement

perior court for further proceedings.[3]

EASTAUGH, Justice, dissenting in part.

The court holds in Part III.A that Thoma has asserted a valid tort claim for the alleged violation of state regulations 13 AAC 25.260 and .280. Op. at 822–824. I dissent from that holding and from Part IV ("CONCLUSION") to the extent it reverses and remands for consideration of that claim.

It is problematic whether Thoma's complaint pled a state regulations tort claim, but assuming Thoma preserved that claim in the superior court, he nonetheless explicitly waived it during briefing in this court. Hickel's appellee's brief noted that Thoma seemed to suggest Hickel could be liable in tort for violating state regulations independent of any constitutional violation. Hickel then urged this court to decline to consider any such argument because Thoma's complaint did not assert an independent state regulation tort claim. In response, Thoma argued in his reply brief:

> Thoma is not asserting a cause of action for violation of the regulations; he cites state regulations to show that his right to have APSIN used only for law enforcement purposes was clearly established. The cause of action is brought directly under the Alaskan Constitution, which was plead in the complaint.

Thoma has thus explicitly disavowed any independent cause of action for violation of 13 AAC 25.260 or .280. He does not argue that, should his constitutional claim be dismissed, his "subsumed" state regulation claim should survive. For whatever reason, Thoma has chosen to rely on the state regulations only in context of his constitutional claim. That is his permissible choice, and we should not force on him a claim he has chosen to disavow. *See Burcina v. City of Ketchikan*, 902 P.2d 817, 823 (Alaska 1995) (holding that an issue is not properly before the court where the issue is not properly

raised or briefed, and the only reference to the issue appears in an opposition memorandum). I consequently would not reverse and remand for consideration of the state regulations "claim."

I agree with the remainder of the court's opinion, including its rejection of Thoma's state constitutional claim. I agree that Thoma could have, had he wished to do so, pursued a nonconstitutional claim based on violations of the state regulations. It is the availability of a potential state regulations claim that renders a state constitutional remedy superfluous. Thoma's voluntary disavowal of any state regulations claim does not allow him to pursue the superfluous constitutional claim.

---

purposes does not create a privately enforceable right of action and therefore does not support a § 1983 claim. This holding is irrelevant to whether violation of Thoma's First Amendment rights supports a § 1983 claim because the independent constitutional violation is sufficient to state a § 1983 claim.

**3.** Because I believe that Thoma has stated a claim under § 1983, I would not reach his state constitutional claims. Accordingly, I do not join the majority's rejection of Thoma's state constitutional claims in section III.B.